The UNITED STATES of America, Plaintiff,

v.

CITY OF MONTGOMERY; Board of Commissioners of the City of Montgomery; Earl D. James, Frank B. Parks and L. B. Sullivan, Members of the Board of Commissioners; and Ranch Enterprises, Inc., Defendants.

Civ. A. No. 1740–N.

United States District Court
M. D. Alabama, N. D.
Jan. 2, 1962.

Burke Marshall, Asst. Atty. Gen., St. John Barrett, John L. Murphy, J. Harold Flannery, Attys., Dept. of Justice, Washington, D. C., and Hartwell Davis, U. S. Atty., Montgomery, Ala., for plaintiff.

Whitesell & DeMent, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

The United States of America, as authorized by Title 49 U.S.C.A. § 1487,

1. Rule 52(a) Federal Rules of Civil Procedure; Thomas v. Peyser, 73 App.D.C. 155, 118 F.2d 369; Lindsey v. Leavy, 9 Cir., 149 F.2d 899, 902.

brings this action seeking to have this Court restrain the defendants from violations of Title 49 U.S.C.A. § 1374(b) and to remove and prevent an unlawful and unconstitutional burden upon and interference with interstate and foreign commerce. The suit is directed toward the maintenance and operation of Dannelly Field, a public airport, and the airport facilities and services of Dannelly Field, all located in Montgomery, Alabama. The defendants are the City of Montgomery, the three members of the Board of Commissioners of the City of Montgomery, and Ranch Enterprises, Inc., an Alabama corporation.

This action is now submitted upon a motion for summary judgment filed herein by the United States, pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. The submission is upon the motion and the several grounds thereof, the pleadings and other documents presently on file with the Court, affidavits attached to the motion, certain depositions taken on oral examination, photographs, and briefs submitted upon behalf of the parties. The defendants— although served with the motion and on December 8, 1961, advised in writing by this Court that the motion would be deemed submitted on December 22, 1961 —filed no counteraffidavits or other evidence in opposition to the motion for summary judgment.

Upon this submission, this Court is of the opinion that there is no genuine issue as to any material fact in this case and that the United States is entitled to a judgment as a matter of law. Although no findings of fact are necessary in this instance,[1] it is considered desirable to state briefly the material facts upon which this Court bases its conclusion and judgment.

The City of Montgomery, a municipality incorporated and existing under the laws of the State of Alabama, through its Commissioners, James, Parks and Sullivan, maintains, operates and man-

ages a public airport known as Dannelly Field located in Montgomery, Alabama. The City maintains at the airport certain terminal facilities for passengers, freight, and mail transported by air carriers in interstate and foreign commerce. The Board of Commissioners of the City of Montgomery—said Board presently being the defendants James, Parks and Sullivan—is the governing body of the City and, as such, is responsible for the maintenance and management of the airport and the airport facilities. Ranch Enterprises, an Alabama corporation, by lease from the City of Montgomery, operates The Sky Ranch restaurant and other incidental facilities at the airport. Delta Air Lines, Inc., and Eastern Air Lines, Inc., are air carriers within the meaning of Title 49 U.S.C.A. § 1301(3) and engage in air transportation in and out of Montgomery via Dannelly Field. Each of these air carriers holds certificates of public convenience and necessity issued by the Civil Aeronautics Board, these certificates authorizing and requiring these air carriers to provide interstate air transportation to and from Montgomery, Alabama, via Dannelly Field. Ranch Enterprises, Inc., pursuant to its contractual arrangement with the City of Montgomery, has the exclusive right to provide food services in the terminal building to passengers in interstate and foreign commerce. Such service and such restaurant facilities as provided by the defendant Ranch Enterprises, Inc., in the airport, are a regular and integral part of the interstate and foreign air transportation service furnished by the above-named air carriers. In operating the restaurant and restaurant facilities, the City of Montgomery, the Board of Commissioners—presently constituted by the defendants James, Parks and Sullivan—and Ranch Enterprises, Inc., have been, at all times material hereto, and are presently doing so on a racially discriminatory basis in that they are refusing table service and dining facilities on a nondiscriminatory basis to Negro interstate and foreign travelers, and such refusal is solely on ac-

count of their race and color. These defendants have adopted and are following the practice of refusing to serve and provide services and facilities on a nondiscriminatory basis to interstate and foreign travelers in the restaurant and other restaurant facilities.

Said defendants have provided and are now providing and maintaining in the terminal separate waiting rooms, separate water fountains, and toilet facilities for members of the white and Negro races who seek to use said facilities while they are engaged in traveling in interstate commerce. In connection with the providing and maintenance of these separate facilities, the defendants have posted signs in the terminals indicating that certain waiting rooms, water fountains, and toilet facilities are reserved for the use of white persons and that others are reserved for the use of Negroes. It is, and has been at all times material to this litigation, the policy and practice of the defendants to prevent Negroes from using the facilities marked for the use of white persons, although there are no segregation ordinances applicable to the airport or the terminal facilities presently in existence in Montgomery, Alabama. The racial signs, as they now exist, state, in effect, that "White May Use This" and "Colored May Use This." White restaurant customers are served in a larger dining area and Negro restaurant customers are served in a smaller dining area. Racially mixed groups who choose to eat together must do so in the area reserved for Negroes, or not at all.

There have been no arrests of Negro patrons for violating the "informative" racial signs. However, in every instance where Negroes sought to use the white facilities, restaurant service has been refused in the terminal. Negroes who sought to use the white drinking facilities have been warned not to do so by individuals who were in apparent authority at the terminal, and in certain instances the city police have been called to the terminal when members of the Negro race persisted in using or attempting to

use facilities reserved for members of the white race. In each instance, these policemen merely "stood by."

The Civil Aeronautics Board by letter dated June 23, 1961, requested the Attorney General of the United States to instruct the appropriate United States Attorney to institute "such action as may be necessary" to eliminate discrimination in terminal facilities at the airport at Montgomery, Alabama. The Honorable Hartwell Davis, United States Attorney for this district, is one of the attorneys of record for the plaintiff in this case.

 It is well settled that the nondiscriminatory provisions of the Federal Aviation Act forbid racial discrimination in activities and facilities to which the statute applies.[2] Fitzgerald v. Pan American World Airways, 2 Cir., 229 F. 2d 499. It is equally clear that the United States is authorized to institute this suit at the request of the Civil Aeronautics Board for the purpose of preventing violations of the Act, including its nondiscriminatory provisions.[3] The defendants are "air carriers" within the meaning of Title 49 U.S.C.A. § 1374(b), and being "citizens" within the meaning of Title 49 U.S.C.A. § 1301(3) [4] are subject to the provisions of § 1374(b); see footnote 2.

Even if it were not concluded that these defendants are air carriers within the meaning of the Act, they are, never-

theless, governed by the nondiscriminatory provisions of the Act. Boynton v. Commonwealth of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206. Lewis et al. v. Greyhound Corporation et al., D.C., 199 F.Supp. 210. What the Supreme Court of the United States stated in the Boynton case at pages 460–461 of 364 U.S., at page 186 of 81 S.Ct. is peculiarly applicable in this case:

> "* * * [I]f the bus carrier has volunteered to make terminal and restaurant facilities and services available to its interstate passengers as a regular part of their transportation, and the terminal and restaurant have acquiesced and cooperated in this undertaking, the terminal and restaurant must perform these services without discriminations prohibited by the Act. In the performance of these services under such conditions the terminal and restaurant stand in the place of the bus company in the performance of its transportation obligations. * * * Although the courts below made no findings of fact, we think the evidence in this case shows such a relationship and situation here."

 It necessarily follows and this Court now concludes, as a matter of law, that the type of segregation practiced and maintained by the defendants at the facilities in question violates § 1374(b).

---

2. 49 U.S.C.A. § 1374(b): "No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

3. 49 U.S.C.A. § 1487(b): "Upon the request of the Board or Administrator, any district attorney of the United States to whom the Board or Administrator may apply is authorized to institute in the proper court and to prosecute under the direction of the Attorney General all necessary proceedings for the enforcement

of the provisions of this chapter or any rule, regulation, requirement, or order thereunder, or any term, condition, or limitation of any certificate or permit, and for the punishment of all violations thereof, and the costs and expenses of such prosecutions shall be paid out of the appropriations for the expenses of the courts of the United States."

4. 49 U.S.C.A. § 1301(3): " 'Air carrier' means any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation: *Provided,* That the Board may by order relieve air carriers who are not directly engaged in the operation of aircraft in air transportation from the provisions of this chaper to the extent and for such periods as may be in the public interest."

The Court cannot be blind to the fact that the separate facilities and signs that these defendants have erected, constructed, and are maintaining, are designed solely to induce and facilitate discrimination because of race or color. The defendants' contention that the segregation maintained is on a voluntary basis and is not compelled by them is completely refuted by the undisputed facts in this case. See the United States District Court case of Brooks v. City of Tallahassee, 202 F.Supp. 56. In that case, the court—even though there was no "enforcement" by the City of Tallahassee—ordered the removal of signs on the ground that their presence constituted racial discrimination in violation of the Constitution of the United States. The nonenforcement defense raised by the defendants in this case is no legal defense. Baldwin v. Morgan, 5 Cir., 287 F.2d 750; Lewis et al. v. Greyhound Corporation et al., supra.

■ In addition to the above, the motion for summary judgment is due to be granted on the ground that such state-imposed racial discrimination, which affects interstate commerce, violates Article I, Section 8, of the Constitution of the United States. Morgan v. Commonwealth of Virginia, 328 U.S. 373, 66 S.Ct. 1050, 90 L.Ed. 1317. The fact that there may not be any statutes or ordinances involved in this case is not material because the City of Montgomery's ownership and operation of these publicly owned terminal facilities is State action. Such State action also includes the City's lessee, Ranch Enterprises, Inc., in its leased facilities and in the operation of these facilities. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 and Department of Conservation and Development, etc. v. Tate, 4 Cir., 231 F.2d 615.

■ There is no question but that the United States has a legal right to maintain an action to relieve burdens on interstate commerce by a lawsuit of this nature. In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092. See also this Court's order and judgment in United States v. U. S. Klans et al., 194 F.Supp. 897.

This Court is of the opinion that the defendants in this case unless restrained by order of this Court will continue to engage in the unconstitutional acts and practices set forth and enumerated above, by giving and causing undue and unreasonable preference and advantage to some persons, while causing unjust discrimination and undue and unreasonable prejudice and disadvantage to others. This Court is of the further opinion that such action on the part of the defendants, unless restrained, will cause irreparable injury to the interests of the United States in the free and unobstructed flow of interstate commerce.

In accordance with the foregoing, the motion of the United States for summary judgment will be granted and an injunction will be issued against the City of Montgomery; the Board of Commissioners of the City of Montgomery; Earl D. James, Frank B. Parks and L. B. Sullivan, Members of the Board of Commissioners; and Ranch Enterprises, Inc., their successors, officers, agents and employees, enjoining them and all persons in active concert or participation with them from:

(a) Refusing to make available to members of the Negro race equally with the members of all other races all facilities generally open to the public at Dannelly Field airport in Montgomery, Alabama;

(b) Preventing or seeking to prevent, directly or indirectly, by force or persuasion, Negroes, by reason of their race, from using any of the facilities of the airport otherwise open and available for public use;

(c) Refusing members of the Negro race service in any part of The Sky Ranch restaurant on account of their race;

(d) Making, giving, or causing any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect, directly or indirectly, by force or persua-

sion, to persons traveling in air transportation and using, while traveling, the airport facilities at Dannelly Field in Montgomery, Alabama.

A formal order and injunction will be issued in accordance with the foregoing.