Irvin H. MASON et al.

v.

Kenneth BELIEU et al.

Appeal of PAN AMERICAN WORLD AIRWAYS, INC.

No. 74–1731.

United States Court of Appeals, District of Columbia Circuit.

Argued May 27, 1975.

Decided April 15, 1976.

Certiorari Denied Oct. 4, 1976. See 97 S.Ct. 144.

---

**55.** There are exceptions to the general rule, but none applicable to the case at bar.

**56.** 5 C.F.R. §§ 771.301 *et seq.* (1974).

William A. Bradford, Jr., Washington, D. C., for appellant.

John S. McCreery, Washington, D. C., with whom Ronald G. Yelenik, Washington, D. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, EDWARDS,* Circuit Judge for the Sixth Circuit and TAMM, Circuit Judge.

Opinion for the Court filed by Circuit Judge TAMM.

Opinion filed by Circuit Judge EDWARDS, concurring in part and dissenging n part.

TAMM, Circuit Judge.

Plaintiffs-appellees, Irvin and Phyllis Mason, commenced this action in district court against 36 named individuals and Pan American World Airways, Inc. (Pan Am) alleging that the defendants had conspired to and committed various tortious acts against them, including violations of their civil rights. The district court dismissed the complaint against all defendants except Pan Am on the grounds of sovereign immunity and lack of personal jurisdiction. The case against the remaining defendant, Pan Am, was tried to the court, resulting in judgments of $1,000 in favor of Mr. Mason and $200 in favor of Mrs. Mason. In the

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

judgment, the district court also awarded the Masons $150 as costs. Pan Am appeals from the judgment in favor of Mrs. Mason and from the allowance of costs.

It is apparent from a review of the record that the district court went to extraordinary lengths to afford Mr. and Mrs. Mason, who were proceeding *pro se*, every fair opportunity to present their case and we commend the trial judge for his conduct of the proceedings. Nevertheless, we are constrained to remand on the two issues raised by Pan Am.

During 1970 and 1971 Mr. and Mrs. Mason and their daughter resided in the Canal Zone where Mr. Mason, a licensed engineer, was a probationary employee of the governmental corporation that operates the Panama Canal. Mr. Mason claimed that while he was employed by the government he observed a number of officials committing what he considered to be unethical, illegal, and unpatriotic acts. The Masons contended that, because Mr. Mason questioned these acts, he was branded a "nonteam player" and a conspiracy was organized among Canal Zone officials to remove him from the Zone. The Masons further claimed that the conspiracy resulted in the termination of Mr. Mason's employment in April, 1971, while he was still a probationary employee, which raised questions concerning the legality of his continued residence in the Canal Zone. In July, 1971, Mr. Mason obtained employment with a Panamanian contractor who had subcontracted work in the Canal Zone, and the Masons continued to reside there. In September, 1971, however, the Magistrate of the Canal Zone ordered Mason evicted from his government housing since he was no longer employed by the government and confiscated his property. The Masons then moved to Panama.

On February 3, 1972, while in the Canal Zone on business for his employer, Mason was arrested and, following a hearing, was ordered deported on February 5. The events surrounding Mr. Mason's deportation received much attention in the Panamanian press. Mr. Mason vowed at his deportation hearing that if deported he would return on the next plane to fight the conspiracy which was behind his dismissal and deportation. Taken to Tocumen Airport in Panama by Canal Zone officials, Mason refused to board a flight to Miami on February 5 and the pilot refused to allow Mason to board when it appeared that he would have to be carried forcibly onto the plane. Early on Sunday, February 6, Mason was again taken to Tocumen Airport, where he was placed forcibly on a Braniff Airlines flight to Miami and was accompanied by an officer of the Canal Zone immigration service. Once in Miami, Mason refused to leave his seat, but was removed by Dade County police officers who placed him in a wheelchair. Inside the terminal, Mason refused to sign a customs declaration, but customs officials ultimately released him.

Consistent with his earlier announced intentions to return to Panama, Mr. Mason purchased a tourist card for entrance into Panama and a ticket for a Pan American flight to Tocumen Airport that afternoon. He then called his wife and informed her of his plans.

Meanwhile, several hours before the departure of Pan Am Flight 585, Pan Am's Assistant Airport Service Manager, Robert Finn, learned from Braniff's manager of the circumstances of Mason's arrival in Miami, of the deportation order, and of Mason's intent to return. Upon discovering that Mason had booked passage on Flight 585, Finn proceeded to the gate. When Mason arrived, Finn told him that Mason could not fly to Panama on Pan Am until Pan Am could confirm that Panamanian authorities would permit Mason to enter that country. Finn was unable to obtain confirmation and Flight 585 departed without Mason. Mason was able to obtain alternate passage on an Air Panama flight to Tocumen Airport, but when he called home, he learned that his wife had already left for the airport to meet the Pan Am flight. Upon his arrival at Tocumen Airport, Mr. Mason was met by his wife, who later testified that she had been kept under surveillance and followed while she waited at the

airport. He was also met there by Canal Zone and Panamanian officials. Considerable confusion ensued, and the Masons decided to seek asylum in Panama. Since Panamanian governmental offices were closed, the Masons were taken into police custody and held until their request for asylum was granted the following day.

The Masons later returned to the United States and in July, 1973, filed this action on behalf of themselves, their daughter and the Mason Engineering Corporation. Named in their complaint were 36 individuals—including officials of the Panama Canal Company, the Canal Zone government, and the Department of the Army—and Pan Am. Prior to trial, the district court dismissed the complaint against three individuals based on sovereign immunity and against all other defendants except Pan Am because of improper service of process.

Although the Masons admitted that Pan Am was not in any way involved in Mr. Mason's dismissal or deportation and was itself a victim of, rather than a participant in, the conspiracy, they nevertheless felt that Pan Am's conduct had caused them mental distress and severe inconvenience and had resulted in their seeking asylum. The case was tried to the court, which found that Pan Am had not been justified in refusing Mr. Mason passage on Flight 585. The court held that both Mr. and Mrs. Mason were entitled to compensatory damages under the antidiscrimination provision of the Federal Aviation Act of 1958, section 404(b), 49 U.S.C. § 1374(b) (1970), but found for Pan Am with respect to the complaints of the Masons' daughter and Mason Engineering. The court set damages at $1,000 for Mr. Mason and $200 for Mrs. Mason; in addition it awarded the Masons costs of $150. Pan Am has not appealed from the judgment entered in favor of Mr. Mason. Its challenge is to the propriety of awarding damages to Mrs. Mason under section 404(b) and to the allowance of costs. It claims that Mrs. Mason was not within the class of persons covered by section 404(b) and that the district court erred in allowing

costs without the filing of a bill of costs. We consider these claims *seriatim*.

In resolving the first issue, we must determine whether nonpassengers are *per se* excluded from 404(b) protection, whether the airline's treatment of Mason or of Mrs. Mason discriminated against her within the broad terms of the statute, and whether a cause of action for damages may be implied for a nonpassenger under the circumstances of this case. We begin our analysis by examining briefly the history of antidiscrimination clauses in public transportation.

Section 404(b) provides in part:

No air carrier or foreign air carrier shall . . . subject any particular person, port, locality or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

49 U.S.C. § 1374(b) (1970). This section was a "reenactment virtually without substantive change" of the Civil Aeronautics Act of 1938. H.R.Rep. No. 2360, 85th Cong., 2d Sess. 15 (1958). The House Report of H.R. 9738, which contained the same language as the 1938 Act, explained that each air carrier "is required to adhere to its tariffs, and is forbidden to charge discriminatory rates or to enforce discriminatory regulations." H.R.Rep. No. 2254, 75th Cong., 3d Sess. 7 (1938). *See also* H.R.Rep. No. 2635, 75th Cong., 3d Sess. 70 (1938).

The language of 404(b) also parallels the antidiscrimination provision of the Interstate Commerce Act of 1887:

(1) It shall be unlawful for any common carrier subject to the provisions of this chapter . . . to subject any particular person, company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever . . . . .

49 U.S.C. § 3(1) (1970). The Interstate Commerce Act provision was aimed primarily at discriminatory rates and practices which favored one shipper or one geograph-

ical area over another.[1] *See, e. g.,* Cullom Report to S. 1093, 49th Cong., 1st Sess. (Jan. 18, 1886), *in* I B. Schwartz, The Economic Regulation of Business and Industry: A Legislative History of U. S. Regulatory Agencies 42 (1973); *see also* Senate Debate on Conference Report to S. 1532, 49th Cong., 2d Sess. (Dec. 15, 1886—Jan. 14, 1887), *in* I Schwartz, *supra* at 371 (remarks of Sen. Coke), 414 (remarks of Sen. Hoar); Statement of House Conferees on S. 1532, 49th Cong., 2d Sess. (Jan. 18, 1887), *in* I Schwartz, *supra* at 459; Debate on Statement of Conferees, 49th Cong., 2d Sess. (Jan. 18–21, 1887), *in* I Schwartz, *supra* at 509 (remarks of Rep. Nelson). It has also served as the basis for cases prohibiting racial discrimination in the provision of railroad facilities, *Henderson v. United States,* 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302 (1950); *Mitchell v. United States,* 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201 (1941).

Although the exact scope of section 404(b) has not been clearly delineated in either the statute or the relevant cases, this provision which protects against unfair application of filed tariffs, *William Becker Travel Bureau, Inc. v. Sabena Belgian World Airways,* 13 Av.Cas. 17770 (S.D.N.Y. May 1, 1975), has also been extended to prohibit racial discrimination, *Fitzgerald v. Pan American World Airways, Inc.,* 229 F.2d 499 (2d Cir. 1956); *United States v. City of Montgomery,* 201 F.Supp. 590 (M.D. Ala.1962); and "bumping"[2] of passengers in a method contrary to established policies, *Nader v. Allegheny Airlines, Inc.,* 167 U.S. App.D.C. 150, 512 F.2d 527 (1975), *cert.* peti-

tion *granted,* 423 U.S. 946, 96 S.Ct. 355, 46 L.Ed.2d 276 (1975); *Wills v. Trans World Airlines, Inc.,* 200 F.Supp. 360 (S.D.Cal. 1961); *cf. Williams v. Trans World Airlines,* 509 F.2d 942 (2d Cir. 1975) (not violation to refuse to transport a passenger when there are reasonable grounds to believe he creates a safety risk to other passengers). We examine the further expansion urged by plaintiff in this case in light of this legislative setting and development.

We begin by observing that nothing in the statute or relevant cases requires absolute exclusion of all injured parties except passengers from the remedial provisions of section 404(b). The all-encompassing definition of "person" found in section 101[3] evidences a desire to provide widescale protection against discriminatory rates and practices. We therefore agree with cases finding that travel agents are shielded under 404(b) against unjust application of rates, *William Becker Travel Bureau, Inc. v. Sabena Belgian World Airways, supra,* and that nonpassengers may not be subjected to racially discriminatory restaurants and restrooms in airports, *United States v. City of Montgomery, supra,* 201 F.Supp. at 594. Assuring just rates and equal access to airline facilities requires a broader reading than protection for passengers only.

This attempt to protect all persons from unjust practices, however, does not mean that all injuries traceable by some direct line of causation to airline discrimination, no matter how distant or minute, are compensable under section 404. Not only must nonpassengers be included within the class

---

1. The Cullom Report also listed these causes of complaint against the railroad system:

   4. That unjustifiable discriminations are constantly made between individuals in the rates charged for like service under similar circumstances.

   5. That improper discriminations are made between articles of freight and branches of business of a like character, and between different quantities of the same class of freight.

   6. That unreasonable discriminations are made between localities similarly situated. I B. Schwartz, The Economic Regulation of Business and Industry: A Legislative History of U. S. Regulatory Agencies 62 (1973).

2. "Bumping" is the practice of failing to board ticketed passengers due to oversale of the scheduled flight. For a description of the problem and suggested remedies, see 40 J. Air L. & Com. 553 (1974); *Nader v. Allegheny Airlines, Inc.,* 167 U.S.App.D.C. 350, 512 F.2d 527, 533–37 (1975).

3. " 'Person' means any individual, firm, copartnership, corporation, company, association, joint-stock association, or body politic; and includes any trustee, receiver, assignee, or other similar representative thereof." 49 U.S.C. § 1301(27) (1970).

of persons covered by the Act, but the injury for which they seek recovery must be an interest protected by the statute. The trial court in the case *sub judice* held that any damages suffered by the Masons as a result of their subsequent detention by Panamanian officials were not attributable to Pan American. Record, Doc. 74 at 10. Mrs. Mason's damages, therefore, related solely to the mental distress she suffered when her husband failed to arrive on the scheduled flight. Although the trial court's opinion does not expressly so hold, it appears to assess these damages both for Pan American's refusal to let Mr. Mason board and for its failure to explain his absence to Mrs. Mason when she inquired at the Pan Am desk. Because Pan Am's actions suggest damages from two kinds of claims— one derivative and one direct—we examine that applicability of section 404(b) as to each.

■ The unjustified refusal of the airline to allow Mr. Mason to use his ticket for Flight 585 affected Mrs. Mason only indirectly since she was not personally denied access to Pan American services or facilities. Although the trial court held that her mental distress was "directly and foreseeably" caused by this action, this tort concept of causation does not bring Mrs. Mason's injury—distress because someone *else* was denied transportation—within the clss of interests sought to be protected by the statute. *See* 40 J. Air L. & Com. 533, 545 (1974) (suggesting persons waiting for bumped passengers should not recover under section 404(b) "because a statute that was designed to protect a particular class of persons from a particular risk or harm creates no duty with respect to another class or risk"). We hold that such derivative claims are not actionable under the antidiscrimination clause.

A more troublesome question arises as to the airline's failure to answer Mrs. Mason's question. A plausible argument can be made that by failing to provide this information, the airline breached its duty of nondiscriminatory treatment of all persons using its public facilities. Even if we were to assume, however, that this alleged "discrimination" is covered by the panoramic protection[4] against "any undue or unreasonable prejudice or disadvantage in any respect whatsoever," we would still have to determine if an implied cause of action exists under 404(b) for this type of injury.

The Federal Aviation Act does not provide for damages caused by violations, but several courts have implied a civil cause of action in a line of cases beginning with the Second Circuit's decision in *Fitzgerald v. Pan American World Airways, Inc., supra.* The *Fitzgerald* court, in allowing damages for racial discrimination, emphasized the need for national standards in evaluating an airline's "separate but equal policy" and the ineffectiveness of the statutory injunctive remedy which operated only prospectively. 229 F.2d at 502. *See also Wills v. Trans World Airlines, Inc., supra,* 200 F.Supp. at 363–65. The *Fitzgerald* implied remedy doctrine has also supported damages in the case of bumped passengers, despite the fact that CAB regulations now provide a remedy.[5] *Mortimer v. Delta Air Lines,* 302 F.Supp. 276, 279–82 (N.D.Ill. 1969); *see also Nader v. Allegheny Airlines, Inc., supra,* 512 F.2d at 537.

We are not convinced, however, that the court's discretion to imply a remedy for some violations of an airline's duty under section 404(b) requires a rule allowing private redress for all breaches of that duty. Courts have sometimes refused to imply a private cause of action from a criminal penalty when the statutory goals could be effectuated by the legislatively decreed remedies or when the claim did not exist at common law. *See, e. g., Rosdail v. Western Aviation, Inc.,* 297 F.Supp. 681, 683–87 (D.Colo.1969); *Yelinek v. Worley,* 284 F.Supp. 679, 681 (E.D.Va.1968); *Moungey v. Brandt,* 250 F.Supp. 445, 451–53 (W.D.Wis.

---

**4.** *See* discussion of the scope of this protection in *Wills v. Trans World Airlines, Inc.,* 200 F.Supp. 360, 363 (S.D.Cal.1961).

**5.** See the discussion of CAB action regarding this problem in *Nader v. Allegheny Airlines, Inc., supra,* 512 F.2d at 533–37.

1966) (violation of Federal Aviation Act safety regulations); *see also William Becker Travel Bureau, Inc. v. Sabena Belgian World Airways, supra* (not allowing injunctive relief to private litigant in 404(b) case).

█ The Supreme Court has recently enunciated four factors which must be considered in determining whether a private remedy is implicit in a statute not expressly creating one:

1. Does the statute intend to protect this class of person from this harm?

2. Did the legislature indicate any intent to create or deny a private remedy?

3. Would the private remedy be consistent with the legislative goals?

4. Is the cause of action one traditionally left to state law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26, 36 (1975). Applying this test, the Third Circuit recently concluded that a private remedy does not exist for all alleged violations of the antidiscrimination provision. In *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332 (3d Cir. 1975), that court refused to recognize a cause of action under the Act for persons claiming that first class ground accommodations in a tour sponsored by a regulated air carrier were inferior to tourist class services. *Id.* at 335–38. The court found that the claimants' remedies lay in state actions for breach of contract, misrepresentation, or breach of warranty and, furthermore, that inferior accommodations do not constitute discrimination under the Act which attempts to assure equal *access* to air facilities. *Id.* at 336 n. 13. We agree with the Third Circuit that the *Cort* standards are determinative of courts' authority to imply remedies under section 404(b).

█ In the case *sub judice,* Mrs. Mason's claim fails to meet the *Cort* test in several particulars. Since there is no clear indication of legislative intent to deny or allow the private remedy, we base our decision on the three remaining *Cort* considerations. *Polansky, supra,* 523 F.2d at 336. First, as discussed earlier, Mrs. Mason's emotional distress caused by her husband's

denied transportation is not an interest protected for nonpassengers under the Act. Second, any disadvantage resulting from Pan American's failure to respond to her question concerns facilities offered as a public convenience and is outside the primary objective of the Federal Aviation Act to promote.

> adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences or disadvantages, or unfair or destructive competitive practices.

49 U.S.C. § 1302(c) (1970). Just as protecting tourists from unsatisfactory hotel accommodations is too far removed from this primary purpose to imply a private remedy, *Polansky, supra,* 523 F.2d at 337, so is assuring persons waiting for passengers that they will be assisted courteously at information counters too remote from the evils intended to be remedied by section 404. Refusing to let ticketed passengers board a plane when others in the same situation are allowed transportation clearly denies access to the "public right of freedom of transit" through navigable airspace, 49 U.S.C. § 1304 (1970), and contravenes the statutory purposes of the Federal Aviation Act. While an information clerk's failure to assist a distraught wife undoubtedly creates poor public relations and is a breach of good carrier practices, we do not believe that preventing every discourtesy or lack of attention is a primary objective of the Federal Aviation Act's avowed purpose to provide adequate air transportation without unreasonable preferences. It is not, therefore, a goal requiring a private remedy not expressly granted by Congress. Finally, claims like Mrs. Mason's which lie outside the major aim of the Act should be relegated to remedies provided by the Act itself or by traditional tort principles of state law. The statute provides adequate protection of the general public's interest in nondiscriminatory treatment at ground facilities by allowing the CAB to seek an injunction prohibiting violations, section 1007(a), 49 U.S.C. § 1487(a) (1970), or to request enforcement of the antidiscrimination provi-

sion by the Attorney General, section 1007(b), 49 U.S.C. § 1487(b). *See, e. g., United States v. City of Montgomery, supra* (racial discrimination in public restrooms at airport). Egregious conduct may also be subject to tort liability. We see no need, therefore, to imply a private remedy for inconveniences suffered by members of the general public at airport facilities.

Although Mrs. Mason's claim before the district court also relied on tort principles, the trial judge granted damages solely under section 404(b). Because we hold that no private damage remedy exists for her under the statute, we must remand this case for evaluation of her other claims. In doing so, we neither condone Pan American's treatment of her nor intimate any view concerning resolution of her alternate claims. These issues are properly left to the trial court.

■ Pan Am's second claim of error is that the district court failed to follow established statutory procedure in awarding the Masons costs of $150 along with the judgment. We find merit in this claim.

Although Rule 54 of the Federal Rules of Civil Procedure endows the trial judge with considerable discretion in deciding whether to tax costs and which costs to allow, his decision is bound by statutory limits. Section 1920 of Title 28, U.S.C. (1970), states in the permissive terms of Rule 54 that "[a] judge or clerk of any court of the United States *may* tax . . . costs . . . ." This section, however, also contains the mandatory admonition that "[a] bill of costs *shall* be filed in the case . . . ." Moreover, section 1924 requires that "[b]efore any bill of costs is taxed," the party, his attorney, or his agent must verify the cost items by affidavit. Since the Masons did not file a bill of costs, the district court's allowance of costs was in error.

It should be noted that the procedures set forth in sections 1920 and 1924 are not mere formalisms. The district court's early allowance of costs resulted in prejudice to Pan Am's rights under Rule 68 of the Federal Rules of Civil Procedure which allows a defending party to make an offer of judg-

ment at any time more tan 10 days before trial. If the offer is not accepted, and the judgment obtained by the plaintiff is not more favorable than the offer, the plaintiff must pay the costs incurred after the offer was made. The offer of judgment is served upon the adverse party and is filed with the court only if accepted. If the offer is not accepted, it can be used only to oppose the award of costs after the plaintiff has filed his bill; the court is not otherwise apprised of its existence. *See* 12 C. Wright & A. Miller, Federal Practice and Procedure § 3002, at 57 (1973).

In this case, more than one month before trial Pan Am offered the Masons a judgment of $3,000 which was not accepted. In accordance with Rule 68, Pan Am cannot be liable for costs incurred by the Masons in obtaining a lesser judgment after the date of the offer. Without the bill of costs mandated by section 1920, the trial judge could not determine which costs were taxable and which costs accrued after the offer. The plaintiffs' failure to comply with the provisions of section 1920 precluded Pan Am from presenting its defense based on Rule 68 and therefore requires reconsideration by the trial court.

For these reasons, the judgment for Mrs. Mason and the judgment awarding costs must be vacated and the case remanded for proceedings consistent with this opinion.

*So ordered.*

EDWARDS, Circuit Judge (concurring in part and dissenting in part).

I am pleased that the court has reached unanimous agreement in this case that:

* * * nothing in the statute or relevant cases requires absolute exclusion of all injured parties except passengers from the remedial provisions of section 404(b). The all-encompassing definition of "person" found in section 101[3] evi-

[3] " 'Person' means any individual, firm, copartnership, corporation, company, association, joint-stock association, or body politic; and includes any trustee, receiver, assignee, or other similar representative thereof." 49 U.S.C. § 1301(27) (1970).

dences a desire to provide widescale protection against discriminatory rates and practices. We therefore agree with cases finding that travel agents are shielded under 404(b) against unjust application of rates, *William Becker Travel Bureau, Inc. v. Sabena Belgian World Airways, supra* [13 Av.Cas. 17770 (S.D.N.Y. May 1, 1975)] and that nonpassengers may not be subjected to racially discriminatory restaurants and restrooms in airports. *United States v. City of Montgomery, supra,* 201 F.Supp. at 594. Assuring just rates and equal access to airline facilities requires a broader reading than protection for passengers only.

I also join the majority holding that the statute in question should not be construed to allow award of derivative damages for Mrs. Mason's mental distress arising from Pan American's failure to carry her husband on the flight back to Panama for which he was ticketed.

Here, however, the District Court also based his award of damages upon direct injury to Mrs. Mason. He found that Mrs. Mason's complaint stated a cause of action [1] under the discrimination provision of the Federal Aviation Act which follows:

> (b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Pub.L. 85–726, Title IV, § 404, Aug. 23, 1958, 72 Stat. 760.

Federal Aviation Act of 1958, 49 U.S.C. § 1374(b) (1970).

Noting the breadth of the language employed by Congress above in prohibiting "unjust discrimination or any undue or un-reasonable prejudice or disadvantage in any respect whatsoever," and further noting the damage figure of $200 found by the District Court, I cannot say that the District Judge's finding of discrimination and disadvantage to Mrs. Mason was "clearly erroneous." As the wife of a fare-paying passenger, she was certainly entitled to meet him on his scheduled arrival at Tucaman Airport. She was also an invitee on Pan American's premises who had a right to inquire concerning why her husband was not on his scheduled Pan American flight. Her testimony, as quoted by the District Judge, "that the clerk did not answer her question and simply walked away into a back room" stands undisputed on this record. Such an unexplained failure to respond to a normal question would, as I believe the District Judge held, "disadvantage" any spouse, even without the highly emotional background of this case.

I can see no valid reason under these facts for failing to imply a cause of action arising under the federal question, diversity, and interstate commerce jurisdictions, 28 U.S.C. §§ 1331, 1332 and 1337 (1970), as did the District Judge. Nor can I see any valid distinction (given the "unreasonable disadvantage" language of the statute) between implying a cause of action here and doing so in the other nonpassenger cases which the majority opinion approves. As to this aspect of the case, I respectfully dissent.

---

1. The District Court founded its jurisdiction to consider the claim upon 28 U.S.C. §§ 1331, 1332 and 1337 (1970).