**Emil SANDERS and Gloria Sanders, d/b/a ABC Travel Consultants, Plaintiffs,**

v.

**AIR INDIA, Defendant.**

No. 76 Civ. 3279.

United States District Court, S. D. New York.

Aug. 10, 1978.

Alan Palwick, New York City, for plaintiffs.

Marvin George Florman, New York City, for defendant.

---

**ROBERT J. WARD, District Judge.**

Defendant moves under Rule 12(b)(6), Fed.R.Civ.P., to dismiss an amended complaint which was served and filed after a trial which ended in a jury deadlock on the legal claim being re-asserted in the amended complaint.[1] The basis of the motion is that there is no private right of action for the injury which these plaintiffs assert under § 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b), and that, even if there is, plaintiffs fail to allege facts to state a claim upon which relief can be granted. For the reasons hereinafter stated, the motion is granted on the ground that no private right of action should be implied.[2]

### The Original Complaint and Pre-Trial Order

Plaintiffs Emil B. Sanders and Gloria Sanders, travel agents, doing business as ABC Travel Consultants ("ABC"), sued Air India, alleging that the defendant airline discriminated against ABC insofar as Air India did not make available to ABC certain cumulative commissions which were made available to "ethnic Indian" travel agents who met a threshold level of sales in 1976. Specifically, the original complaint, filed July 23, 1976, and pre-trial order, filed February 8, 1978, alleged that prior to January 1, 1976, Air India paid an 11% commission to all of its travel agents. In early 1976, Air India assertedly commenced a program of paying to its agents of Indian origin or descent an extra 4% commission plus an extra 2% commission at the end of each year if such agents equalled or exceeded $300,000 in sales for such period. The complaint alleged that Air India did not publicize this program in any way to travel agents generally. Plaintiffs also alleged that ABC asked Air India to pay such additional commissions to it, but Air India did not accede to this request. According to plaintiffs, the failure to accede to this request for equal commissions placed ABC in a position where it could not successfully compete in the sale of transatlantic airplane tickets to India and various other places with agents of Air India who are of Indian origin or descent. Consequently, plaintiffs allegedly suffered or will suffer damages in excess of $100,000 in lost commissions. Plaintiffs contended that the foregoing constitutes a violation of (1) § 1 of the Sherman Act, 15 U.S.C. § 1; (2) § 2 of the Sherman Act, 15 U.S.C. § 2; (3) § 2 of the Robinson-Patman Act, 15 U.S.C. § 13; (4) the fifth amendment to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 2000d; (5) § 296 of the New York Executive Law (McKinney 1972 & Supp. Pamph.1972–77) (the Human Rights Law). The complaint seeks $100,000 in compensatory damages, $500,000 in punitive damages, costs and attorneys fees.

### The Pre-Trial Brief

On the day of trial, February 27, 1978, plaintiffs submitted a pre-trial brief containing a statement of facts which elaborated on the factual basis of plaintiffs' claim. However, it also varied materially the facts alleged in the complaint and pre-trial order as to the particulars of the cumulative commission structure and the period in which it was in effect. According to the pre-trial brief, cumulative commissions were paid "[d]uring the period from April 1, 1975, to May 1, 1977, . . . to certain agents [in the amount of] 4% on sales of $150,000 or more during a fiscal year commencing April 1, and a further 2% on all sales if $300,000 in sales of Air India tickets were achieved

---

1. Factually, the amended complaint varies from the original complaint, pre-trial order and pre-trial brief. The factual variances in these papers and the proof at trial should be apparent from the discussion which follows.

2. Because this suit does not challenge the fairness of tariffs or commission structures filed with the Civil Aeronautics Board ("CAB"), but, rather, challenges the fairness with which filed and unfiled commission structures *are applied* by an airline to its agents, this suit is not barred by the doctrine of primary jurisdiction. *William Becker Travel Bureau, Inc. v. Sabena-Belgian World Airways*, 13 Aviation Cas. ¶ 17,-770 (S.D.N.Y.1975); *see Danna v. Air France*, 463 F.2d 407, 412 (2d Cir. 1972). *See generally Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–06, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

in that year." [3] *Plaintiffs' Pre-Trial Brief* at 1.

In addition to varying the facts, the pre-trial brief varied the legal theories. The Robinson-Patman and Civil Rights Act claims were abandoned and a claim under § 404(b) of the Federal Aviation Act was added. The Federal Aviation Act claim was similar to the New York Executive (Human Rights) Law claim, except that the latter outlaws discrimination on the basis of race or national origin, while the former broadly forbids "any undue or unreasonable preference or advantage . . . to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Thus, under the Federal Aviation Act, plaintiffs would not necessarily have to prove that Air India discriminated in favor of "ethnic Indians," so long as they could prove that the manner in which the commission plans were publicized subjected them to any undue or unreasonable preference or disadvantage.

Because it was surprised by the eleventh hour inclusion of an unpleaded cause of action under § 404(b) of the Federal Aviation Act, Air India objected strenuously that it would be prejudiced by the Court's permitting plaintiffs to proceed on this new theory. The Court, while reserving decision on whether or not to ultimately permit the amendment, permitted plaintiffs to pursue the Aviation Act claim on the representation of plaintiffs' counsel that their proof would not be affected by the assertion of this new claim; therefore, defendant would not have to meet any additional proof, although, of course, defendant would have to be prepared to meet the additional argument that this proof sustains a violation of the broader, less stringent elements of the Federal Aviation Act claim.

During the course of the trial, plaintiffs withdrew their Sherman Act claims. The case, therefore, went to the jury on only two claims: (1) that the cumulative commission scheme discriminated against plain-tiffs on the basis of race or national origin, in violation of § 296 of the New York Executive Law (McKinney 1972 & Supp. Pamph.1972–77); and (2) that the cumulative commission scheme unjustly discriminated against plaintiffs "in any respect whatsoever" in violation of § 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b).

### The Proof at Trial

The proof at trial indicated that between 1975 and 1977 Air India had numerous incentive commission schemes. For example, from October 1975 to April 1976 it paid a 5% bonus on total sales if they exceeded $150,000 and an extra 2% if they exceeded $300,000. From May 1976 to March 1977 the plan was changed to 4% and 2% on $150,000 and $300,000 respectively. In April 1977 Air India switched to a straight 6% bonus on sales exceeding $25,000. These cumulative commissions (or at least the 4% and 2%) were not payable on group sales because those were compensated by a separate "override" bonus commission.

The proof confirmed plaintiffs' allegation that ABC was not individually notified of such commission plans; nor was such information distributed generally in an organized fashion. Nonetheless, the disorganized or even selective, method of communicating this information worked in such a way that members of the trade, including Mr. Sanders, learned that some type of cumulative commission structure existed. Mr. Sanders testified that he learned of a cumulative commission plan around February or March 1976, which prompted him to write Air India on or about June 9, 1976 to ask that the commissions afforded the "ethnic agents" be made available to ABC.

Air India did not respond to this letter, perhaps because ABC did not appear to have the potential to reach the threshold levels of sales. ABC had not sold any Air India tickets up to that point in 1976. In fact, ABC had *never* earned a single com-

---

**3.** Compare the description, *supra,* of the cumulative commission scheme alleged in the original complaint.

mission from Air India.[4] In any event, Mr. Sanders did not follow-up on his June 9th inquiry. Instead he filed suit on July 23rd.

Plaintiffs contend that ABC lost approximately $156,000 in commissions as a result of the selective—discriminatory—manner in which the cumulative commissions were made available. This figure purportedly represents the commissions ABC was unable to earn because of the sales it lost by virtue of its inability to pass on to its salesmen a percentage of the cumulative commissions. Mr. Sanders testified that one of the reasons for the lost sales was that his own salesmen took the Indian business to other agencies to get higher commissions for themselves. Rashim Paleja, one of Sanders' salesmen, testified that in December of 1976 he had customers for India but he did not place them through ABC. He booked these passengers through other travel agents on Air India and other airlines, including Air France.

Lastly, by federal regulation, as of September 29, 1976 all commission structures had to be filed with the CAB and carriers had to make the filed commission schedule available to any person requesting it. 14 C.F.R. §§ 253.3, 253.4(b) (1977). Therefore, as of that time, all of Air India's commission structures were available to ABC. However, Mr. Sanders testified that he was unaware of this means of obtaining commission information, even though he was president of the Travel Committee, Incorporated in 1976 and, as such, professed to be knowledgeable in his field.

The jury deliberated and reached a verdict for defendant on the New York Executive Law claim. The jury was unable to reach a verdict on the Federal Aviation Act claim, necessitating a re-trial of that claim. Partial summary judgment was entered, withdrawing causes of action one through four and granting judgment for defendant on the fifth cause of action, the New York Executive Law claim.

### The Amended Complaint

Thereafter, plaintiffs served and filed an amended complaint formally alleging a violation of § 404(b) of the Federal Aviation Act. The amended complaint, shaped by this single theory and the proof that developed at trial, alleges facts that vary from those asserted in the original complaint, pre-trial order and pre-trial brief. It alleges that *prior to 1975* Air India paid the same commission to all agents on tickets from New York to India, but in *early 1975* Air India began paying *certain* agents (as opposed to ethnic agents) an extra 4% on sales equalling or exceeding $150,000 for the fiscal year, plus an extra 2% at the end of each year that sales exceeded $300,000. *At the same time it began paying 15% to certain agents for booking groups of ten or more passengers.*

The amended complaint is the subject of this dismissal motion.

### Should the Court Imply a Private Right of Action Under § 404(b) of the Federal Aviation Act in Favor of Travel Agents Claiming Economic Harm as a Result of an Airline's Unjustly Discriminatory Commission Scheme?

The determination of whether a private right of action may be implied under a particular statute is governed by the four-part test set forth in the recent Supreme Court decision of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . .—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basical-

4. Most of the Indian tickets sold by ABC in 1975 were booked on Pan Am and about half of these were group tickets.

ly the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (emphasis in original). *See generally Note,* The Decline of the Implied Private Cause of Action, Continued: The Third Circuit Construes the Federal Aviation Act, 31 *Rutgers L.Rev.* 41 (1978). The first inquiry, then, is whether a plaintiff travel agent comes within the class for whose "especial" benefit § 404(b) of the Federal Aviation Act was enacted.

Section 404(b) provides:

No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

Clearly, the language of § 404(b) is very broad and by its terms is not limited to any particular class of person. However, nearly all of the cases implying a private right of action under this section involved passengers asserting discrimination by virtue of being denied access either to a flight, *e. g., Fitzgerald v. Pan Am,* 229 F.2d 499 (2d Cir. 1956); *Nader v. Allegheny Airlines, Inc.,* 445 F.Supp. 168, 172 (D.D.C.1978); *Roman v. Delta Air Lines, Inc.,* 441 F.Supp. 1160, 1165 (N.D.Ill.1977); *Karp v. North Central Airlines, Inc.,* 437 F.Supp. 87, 89 (E.D.Wis. 1977); *Mortimer v. Delta Air Lines,* 302 F.Supp. 276 (N.D.Ill.1969); *Wills v. TWA,* 200 F.Supp. 360 (S.D.Cal.1961), or to a carrier's ground facilities. *United States v. City of Montgomery,* 201 F.Supp. 590 (M.D.Ala. 1962).[5]

In implying a private right of action for a passenger who was prohibited from boarding a flight because of racial prejudice, the United States Court of Appeals for the Second Circuit in *Fitzgerald, supra* at 500, quoted from what is now 49 U.S.C. § 1304: "There is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." It then concluded that § 404(b) had been enacted "for the benefits of persons, including passengers, using the facilities of air carriers." *Id.* at 501. Similarly, in implying a private right of action for a prospective passenger who had been a victim of overbooking, the *Wills* court, *supra,* at 363, also quoted 49 U.S.C. § 1304 and quoted 49 U.S.C. § 1302(c) which provides that one of the policies of the act is "[t]he promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices."[6] The *Wills* court then concluded that "[a]lthough the statute is cast in general terms because of the complexities of the subject . . ., it is plainly intended to provide individual passengers with a Federal right to service without undue or unreasonable discrimination." 200 F.Supp. at 363. In sum, these cases generally defined the class for whose especial benefit § 404(b) was intended as persons, including passengers, using the facilities of air carriers. *See also Transcontinental Bus System, Inc. v. CAB,* 383 F.2d 466 (5th Cir. 1967), *cert. denied,* 390 U.S. 920, 88 S.Ct. 850, 19 L.Ed.2d 979 (1968) (Section 404(b) provides "that airline traffic, both passenger and cargo traffic, is to be treated equally by the air carriers. [It

---

**5.** *But see Allied Air Freight, Inc. v. Pan Am,* 393 F.2d 441 (2d Cir.), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). This was an action under §§ 1 and 2 of the Sherman Act and § 404 of the Federal Aviation Act brought by an air freight forwarder against an air carrier for damages allegedly caused by action taken by the air carrier and a competing freight forwarder in denying airspace to plaintiff and giving undue preference to the compet-

ing freight forwarder. Although the injury alleged in *Allied Air Freight* is close to that alleged in the instant case, *Allied Air Freight* is not relevant inasmuch as that court did not analyze the question of implied right of action, being concerned only with primary jurisdiction.

**6.** *See also Mortimer v. Delta Air Lines, supra,* 302 F.Supp. at 278–79. *See generally* 49 U.S.C. §§ 1302–1304.

is] designed to insure that rates and services are offered on an equal basis to all who seek to use the air carriers. [It is] intended to protect the traveling public . . . ." *Id.* at 474–75. "Unjust discrimination, unreasonable preference or prejudice against passengers, shippers, terminals or points served are precluded by § 404(b)." *Id.* at 477); *Viking Travel, Inc. v. Air France,* 76 Civ. 2195 (E.D.N.Y. June 2, 1978).

In *Polansky v. TWA,* 523 F.2d 332 (3d Cir. 1975), the United States Court of Appeals for the Third Circuit recently declined to imply a private right of action under § 404(b) in favor of passengers who claimed that the defendant air carrier provided them with inferior ground accommodations in connection with a tour sponsored by the air carrier. The Court reasoned that although plaintiffs came within the class of persons to be benefitted by the statute, they did not suffer the type of harm the statute was designed to prevent. *Id.* at 335. Its conclusion that the harm was outside the purpose of the statute was predicated on its belief that

> the statute aims to protect the right of *access* to air facilities from discriminatory interference by the air carrier. The airline is required to treat all potential passengers and users equally. Thus, the airline may not prohibit minority groups from equal access to flights or terminal facilities. Similarly, although bumping is not a *per se* violation of § 1374(b), the airline may not bump in a discriminatory manner violative of the airline's published standards. In all of the cases in which a private remedy has been implied from § 1374(b) there was a discriminatory denial of *access* to air facilities. In our view, it is this denial of access to air facilities, whether caused directly, by outright refusal of permission to board, or indirectly, by burdening the potential user with special requirements not applied to the general public, which is critical.

*Id.* at 335–36 (emphasis in original; footnote omitted). In sum, *Polansky* agreed that § 404(b) was intended to protect users of air facilities, and held that the use protected is equal access to such facilities.

Thus, the harm outlawed by § 404(b) is discrimination in access to air facilities. *See generally Note,* The Decline of the Implied Private Cause of Action, Continued: The Third Circuit Construes the Federal Aviation Act, 31 *Rutgers L.Rev.* 41 (1978). *See also Rauch v. United Instruments, Inc.,* 548 F.2d 452, 457 & n. 9 (3d Cir. 1976).

Despite the conclusion of these cases that § 404(b) was intended to benefit those using, or denied access to using, the facilities of air carriers, two courts recently took a more expansive view of the class of intended beneficiaries of § 404(b). *Mason v. Belieu,* 177 U.S.App.D.C. 68, 543 F.2d 215, *cert. denied,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *William Becker Travel Bureau, Inc. v. Sabena-Belgian World Airways,* 13 Aviation Cas. ¶ 17,770 (S.D.N.Y. 1975).

In *William Becker* the district court denied a motion to dismiss the complaint of a travel agent alleged to be a victim of a discriminatory scheme by which the defendant airline, through certain other travel agents, had been selling airplane tickets to the public below the tariff rate filed with the CAB and had been permitting certain travel agents to retain a higher commission than plaintiff and other members of the class. The pertinent portion of the motion to dismiss was premised on the argument that a travel agent is not a " 'person' within the meaning of section 404(b) and thus has no right of action thereunder." Slip. op. at 2. The Court disposed of this argument by reasoning:

> [D]efendant makes much of the fact that there are no cases in which a travel agent has sought relief as a "person" under section 404(b). However, defendant has cited no convincing authority for the proposition that a travel agent may not bring such an action. The legislative history of the statute sheds no light on the issue. The following definition of "person" however, contained in section 101 of the Act, 49 U.S.C. § 1301, is applicable: " 'Person' " means any individual, firm, copartnership, corporation, company, association, joint-stock association, or body

politic; and includes any trustee, receiver, assignee, or other similar representative thereof, 49 U.S.C. § 1301(29). This broad definition of "person" cannot be limited to include only passengers simply because this is the only class of persons who have brought actions alleging unjust discrimination under section 404(b). A corporate travel agent is clearly a "person" as defined in section 101 and, therefore, has standing to sue under the statute in issue.

Slip op. at 2–3. Insofar as *William Becker* involved not only alleged discrimination against travel agents, but also against passengers, *i. e.*, in sales of tickets to some members of the public at below the filed tariff rate, and involved not only discriminatory commissions, but also discriminatory rates, a subject addressed by § 404, it is distinguishable from the instant case and perhaps reconcilable with a *Cort* analysis. However, because *William Becker* was decided a month and a half before *Cort v. Ash,* it did not employ the *Cort* analysis which this Court is bound to apply. *See, e. g., Viking Travel, Inc. v. Air France,* 76 Civ. 2195 (E.D.N.Y. June 2, 1978), at 10 ("[W]ithin the terms of the first *Cort* test, it is apparent that the [Federal Aviation Act] in general . . . [was] designed to protect the user of air facilities, whether he be a passenger, cargo shipper or otherwise. Travel agents, however, are not users of air transportation, but are providers of that service . . . ."). Accordingly, the precedential value of *William Becker* is limited.

Nonetheless, in *Mason v. Belieu, supra,* the United States Court of Appeals for the District of Columbia agreed with *William Becker* that nonpassengers *per se* are not necessarily excluded from the class of persons covered under § 404(b).[7] However, that court went on to hold that a plaintiff suing Pan Am for mental distress as a result of her husband's being denied access to a ticket and as a result of Pan Am's refusal to answer her inquiries as to her husband's whereabouts did not allege injury to an interest protected by the statute. The former injury was merely derivative of another person's being denied access to transportation. The latter injury concerned "facilities offered as a public convenience and is outside the primary objective of the Federal Aviation Act [as expressed in 49 U.S.C. § 1302(c)]." 177 U.S.App.D.C. at 74, 543 F.2d at 221.

These prior judicial interpretations of the purpose of the Federal Aviation Act, particularly § 404(b), would lead this Court to conclude that even if travel agents are within the class of persons to be benefitted by § 404(b), the harm alleged here—discrimination in compensation of travel agents, resulting in unfair competition—does not fall within the interest to be protected by this statute, namely, equal access to transportation and related facilities. Unlike the discrimination in rates alleged in *William Becker,* the discrimination in compensation alleged here has no adverse effect on the travelling public, which must pay the tariff rate regardless of which travel agent provides the service. Because the public interest protected by the Federal Aviation Act is unaffected by the claimed injury, plaintiffs' injury is outside the scope of the interests to be protected.

In addition to the judicial interpretations of the legislative purpose of § 404(b), a number of other factors support the conclusion that § 404(b) was not directed at the injury plaintiffs assert. First, § 404(b) must be read in context with the rest of § 404. That section is entitled "Rates for carriage of persons and property; duty to provide service, rates, and divisions; foreign air transportation rates; discrimination." Subdivision (a) essentially establishes the requirement to provide safe and adequate service at just and reasonable rates, and in the case of joint fares to provide for equitable division of such fares between air

---

**7.** "We . . . agree with cases finding that travel agents are shielded under 404(b) *against unjust application of rates, William Becker Travel Bureau, Inc.* . . . ." 177 U.S.App. D.C. at 72, 543 F.2d at 219 (emphasis added).

Note that the *Mason* Court focused on the rate aspect of *William Becker* to the exclusion of the commission aspect. While § 404 expressly speaks of rates, it does not mention commissions.

carriers without unduly preferring or prejudicing any participating carrier. Subdivision (b) then goes on to outlaw any undue or unreasonable preference. Reading § 404(b) in the context of its juxtaposition to § 404(a), it would seem that the preferences outlawed by § 404(b) would have to do with discrimination arising out of a carrier's failure to comply with the § 404(a) requirement that it provide safe and adequate service, just and reasonable rates, or equitably divided joint fares.

A second reason to believe that § 404(b) was not directed at a carrier's discriminatory compensation of travel agents is that § 411, 49 U.S.C. § 1381, entitled "Methods of Competition," is expressly directed at "unfair or deceptive practices or unfair methods of competition in air transportation *or the sale thereof.*" 49 U.S.C. § 1381 (emphasis added). It is significant that a new regulation, 14 C.F.R. pt. 253 (1977), which requires airlines to file their commission structures with the CAB and make these filed documents available to any person requesting them, was promulgated pursuant to, *inter alia*, § 411 of the Federal Aeronautics Act, and not pursuant to § 404(b). This lends support to the conclusion that § 411, rather than § 404(b), is concerned with the injury alleged in this suit. Yet, there is no implied private right of action under § 411. *Polansky v. TWA, supra,* 523 F.2d at 338–40; *accord, Wolf v. TWA,* 544 F.2d 134, 136 (3d Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977). *See also Pan American World Airways, Inc. v. United States,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). Thus, this Court is being asked to imply a right of action under § 404(b) to remedy what is essentially § 411 harm. To do so would not only run afoul of the first *Cort* test discussed at length herein, but would also interfere with the legislative scheme. Therefore, the Court concludes that implication of a private right of action would be improper based on the third *Cort* test as well.[8]

For the foregoing reasons, the Court believes that under the analysis of *Cort v. Ash, supra,* it would be improper to imply a private right of action under § 404(b) of the Federal Aviation Act in favor of travel agents alleging private economic harm by virtue of alleged discrimination in commissions. Accordingly, the amended complaint is dismissed.[9]

It is so ordered.

---

8. As to the third *Cort* test—whether implication of a private right of action would be consistent with the underlying purposes of the legislation—*Polansky, supra,* concluded that implication of a right of action would not be consistent with the legislative policy expressed in 49 U.S.C. § 1302(c) and § 1304, which that court construed to be "to insure free *access* to air facilities." 523 F.2d at 337 (emphasis in original).

   As to the second *Cort* test—whether there was legislative intent to create or deny a private remedy—*Polansky, supra* at 336 & n. 14, concluded that the legislative history was unen-

lightening. *Accord, Mason v. Belieu, supra* at 221.

   As to the fourth *Cort* test, although discrimination may not be an area traditionally relegated to state law, New York has had a Human Rights Law for some time, *see* New York Executive Law §§ 290 *et seq.,* and plaintiffs have had the benefit of submitting a claim under that statute to a jury.

9. Because the Court declines to imply a private right of action it is unnecessary to address defendant's argument that the amended complaint otherwise fails to state a claim.