Charles POLANSKY et al., Appellants.

v.

TRANS WORLD AIRLINES, INC., a corporation having its principal place of business, City of New York, State of New York, operating in all States in the United States of America, including the State of New Jersey, and Melia Tours, Inc., with its principal place of business, City of New York, State of New York, Appellees.

Nos. 75–1088, 75–1565.

United States Court of Appeals, Third Circuit.

Argued June 9, 1975.

Decided Sept. 9, 1975.

Shanley & Fisher, Raymond M. Tierney, Jr., Thomas J. Alworth, Newark, N. J., for Trans World Airlines, Inc.

Hellring, Lindeman & Landau, Joel D. Siegal, James A. Scarpone, Newark, N. J., for Melia Tours, Inc.

Norman Shabel, Newark, N. J., for appellants.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

In this case we must decide whether airline passengers who were furnished allegedly inferior ground accommodations in a tour, sponsored by a Civil Aeronautics Board (CAB) regulated air carrier, can maintain an action against the air carrier on the basis of 49 U.S.C. § 1374(b) and § 1381, § 404 and § 411 of the Federal Aviation Act.[1] Given the facts of this case, we hold that a private cause of action may not be implied from these statutes. Accordingly, we affirm the district court's Fed.R.Civ.P. 12(b)(6) dismissal of the complaint for failure to state a claim upon which relief can be granted.[2]

## I

Plaintiff-appellants were members of a European tour sponsored by defendant airline, Trans World Airlines, Inc. (TWA) and defendant travel agency, Melia Tours, Inc. They allege that TWA and Melia supplied services different than those warranted in literature, advertising the "Flamenco" tour of Spain and Portugal and that by this advertising, defendants fraudulently induced them to participate in the tour. Plaintiffs specifically charge that their "first-class" hotel accommodations were inferior to tourist accommodations provided to other members of the tour at lesser cost; that pre-planned inter-city travel services were inadequate, that pre-arranged reservations were broken or not honored; and that promised tour guides, hosts and hostesses were not available.

As the basis of the suit,[3] plaintiff-appellants relied on two sections of the Federal Aviation Act. 49 U.S.C. § 1374(b), § 404 of the Act, specifically prohibits discrimination by any regulated air carrier. 49 U.S.C. § 1381, § 411 of the Act, in turn, gives the CAB power to investigate and enjoin unfair or deceptive practices. Since neither section provides for private enforcement, plaintiffs sought to *imply* a private cause of action for damages from these statutes. The district court held that it would be inappropriate to imply a private remedy from § 1374(b) on the facts of this case.[4] In reaching this result, the court distinguished a series of precedents in which a private remedy had been implied from § 1374(b). Without further consideration of the issues raised by § 1381, the district court granted defendant-appellees Rule 12(b)(6) motion to dismiss.[5] The instant appeal followed.

---

1. See *infra* at 334–335 for text of 49 U.S.C. § 1374(b) and *infra* at 338 for text of § 1381.

2. The decision of the district court is unreported. *Polansky et al. v. Trans World Airlines, Inc., et al.,* Civil No. 74–643 (D.N.J., December 5, 1974).

3. Jurisdiction is based on 28 U.S.C. § 1331. The $10,000 amount requirement of § 1331-federal question jurisdiction was satisfied by what the district court construed as a non-frivolous demand for punitive damages.

   Appellants also sought to establish jurisdiction in the district court under 28 U.S.C. § 1337 which gives the federal district courts original jurisdiction of any suit "arising under any Act of Congress regulating commerce or protecting trade or commerce against restraints and the monopolies." The district court did not address this issue.

4. The district court concluded that any prejudice or disadvantage suffered by plaintiffs "was not suffered in the course of actually transporting plaintiffs or while engaged in activities necessarily related to such transportation." In the district court's view § 1374(b) does not cover land services which are the basis of the instant complaint. *See infra* n. 13.

5. In the context of a Fed.R.Civ.P. 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," we assume for the sake of argument that all the facts pleaded by plaintiffs are true.

## II

In determining whether a private remedy is implicit in a statute not expressly providing for one, the Supreme Court has indicated that at least four factors must be considered. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[6] Specifically, a court must consider: *first,* whether the statute was designed to protect a class of persons into which plaintiff falls from the harm plaintiff has suffered; *second,* whether there is any indication of legislative intent to create or deny a private remedy; *third,* whether implication of a private remedy would be consistent with the purposes of the legislative scheme; and *fourth,* whether the cause of action is one traditionally relegated to state law such that inference of a federal cause of action would be inappropriate. *See also: National Rail Passenger Corp. v. National Association of Rail Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (*Amtrak*)[7] and *Securities Investor Protection Corporation v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975) (*SIPC*).[8]

### A.  49 U.S.C. § 1374(b)

49 U.S.C. § 1374(b) provides:

No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or *subject any particular person,*

---

**6.** In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court reversed this court's decision in *Ash v. Cort,* 496 F.2d 416 (3d Cir., 1974). We had held that a private cause of action could be implied from 18 U.S.C. § 610, a criminal statute prohibiting corporations from making "contribution[s] or expenditure[s] in connection with any election at which Presidential . . . electors . . are to be voted for." Ash, a stockholder of Bethlehem Steel, sought injunctive relief and derivative damages from corporate directors for certain advertising expenses which Ash construed as "pro-Nixon." In reversing, the Supreme Court held that a private cause of action could not be implied from § 610. The Court reasoned the § 610 was concerned less with corporate relations between shareholder and director than with possible abuses of corporate wealth to influence federal elections. A private remedy for Ash would in no way further the primary congressional goal of § 610.

**7.** In *Amtrak, supra,* the National Association of Rail Passengers (NARP) sought to enjoin the discontinuance of passenger rail service. NARP alleged that discontinuation would violate the Rail Passenger Act of 1970 (Amtrak Act). The Supreme Court held that NARP lacked standing under § 307(a) of the Amtrak Act, 45 U.S.C. § 547. § 307, by its terms, gave the district court jurisdiction over suits brought by the Attorney General, and certain labor organizations, to prevent violations of the Amtrak Act. The statute did not create a private cause of action. The Court refused to imply one because the statute already provided a remedy for violation of the Act. In light of the language of § 307(a) and its legislative history, the Court held that to imply a private remedy "would completely undercut the efficient apparatus that Congress sought to provide" for the destitute railroads covered by the Amtrak Act, 414 U.S. at 463, 94 S.Ct. at 696.

Because a remedy for violation of the Act had been provided, because there was no evidence of a legislative intent to allow any additional remedies, and further because implication of a private remedy would undercut the legislative scheme, the Court in *Amtrak* refused to imply a private cause of action.

**8.** In *SIPC, supra,* a receiver representing customers of an insolvent registered broker-dealer sought to compel the SIPC to act for the benefit of those customers according to the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa *et seq.* That act creates procedures for liquidation of financially troubled member brokers. If the SIPC determines that a member brokerage is in danger of failing, it may file an application for liquidation of the member firm in the district court. SIPC, which acts under the supervision of the SEC, maintains a fund from membership assessments, which is used to protect customers of failing brokerages.

The Supreme Court refused to imply a right of action under the act for customers of insolvent dealers who sought to compel the SIPC to begin liquidation proceedings. Concluding that *Amtrak, supra* n. 7, was directly on point, the Court pointed out that exclusive enforcement of the act was vested in an agency created specifically for that task and there was no extrinsic evidence of a congressional intent to allow private enforcement. 421 U.S. at 418–421, 95 S.Ct. 1733.

port, locality, or description of traffic *in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.* (Emphasis added).

On its face, the statute prohibits an air carrier from unjustly discriminating or acting with prejudice against any person in air transportation. Although § 1374(b) is silent about private enforcement, courts have implied a private remedy for a variety of acts by the air carrier, including racial discrimination,[9] and bumping in violation of the airline's own standards.[10]

It would be a mistake to assume, however, that the implication of a private remedy from § 1374(b) in these cases requires that a private remedy exists for all alleged violations of the act. In our view, each new category of conduct alleged to violate § 1374(b) must be tested against the standards stated by the Supreme Court in *Cort v. Ash, supra.* The

cases previously decided under § 1374(b), however, are illustrative of the kinds of conduct the statute seeks to prevent.

With respect to the *first Cort* test, we note that plaintiff-appellants, as air passengers, are clearly members of the class § 1374(b) was designed to protect. § 1374(b) prohibits the airline from prejudicing "any . . . person . . . in air transportation. . . ." The decided cases have uniformly held that air passengers may rely on § 1374(b).[11] Although members of the proper class, plaintiff-appellants did not suffer the harm the statute was designed to prevent.

In our view, the statute aims to protect the right of *access* to air facilities from discriminatory interference by the air carrier. The airline is required to treat all potential passengers and users equally. Thus, the airline may not prohibit minority groups from equal access to flights or terminal facilities.[12] Simi-

---

**9.** In *Fitzgerald v. Pan American World Airways,* 229 F.2d 499 (2d Cir., 1956) the Second Circuit implied a cause of action from the predecessor statute of § 1374(b), in favor of three black passengers who were removed from a flight during a layover stop despite first-class reservations to continue.

**10.** In *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527, 537 (D.C.Cir., 1975), *reversing* 365 F.Supp. 128 (D.D.C., 1973) the court specifically stated:

> that the practice of overbooking does not *per se* give rise to an actionable Section 404(b) violation. . . . Carriers must be given a reasonable opportunity to ameliorate the [passenger] no-show problem. Moreover, whether intentional overbooking is a reasonable response to that problem must be determined in the first instance by the Civil Aeronautics Board. . . . Even if overbooking is not a *per se* section 404(b) violation, the determination of which passengers will be denied boarding presents the possibility of abusive and discriminatory actions.

> . . .

The *Nader* court concluded that § 1374(b) becomes operational when a passenger alleges *discriminatory* interference with his access to a reserved seat. *Accord, Archibald v. Pan Am World Airways, Inc.,* 460 F.2d 14 (9th Cir., 1972); *Mortimer v. Delta Air Lines,* 302 F.Supp. 276 (N.D.Ill., 1969) and *Wills v. Trans*

*World Airlines, Inc.,* 200 F.Supp. 360, 365 (S.D.Cal., 1961).

**11.** In *Wills v. Trans World Airlines, Inc.,* 200 F.Supp. 360 (S.D.Cal., 1961), for example, the court discussed at great length whether passengers were members of the class § 1374(b) was designed to cover. The court concluded that although the act was cast in general terms, it was "plainly intended to provide individual passengers with a Federal right to service without undue or unreasonable discrimination." *Id.* at 363.

**12.** Although we have found no case in which a private remedy was implied for a denial of access to terminal facilities, we have no doubts that free use of terminal facilities is fully protected by the Act. In *United States v. City of Montgomery,* 201 F.Supp. 590 (D.C. Ala., 1962), the district court held that separate terminal facilities for blacks violated § 1374(b) of the Act. *City of Montgomery* was a suit brought by the United States. Nevertheless, a private remedy could surely be implied since denial of access to terminal facilities burdens the traveler in such a way that access to air service is effectively denied.

In the instant case, the issue of terminal facilities is not strictly before us. Instead, we are faced with a broader issue—that is—does § 1374(b)'s coverage extend beyond terminal facilities to other ground-services, the cost of

larly, although bumping is not a *per se* violation of § 1374(b), the airline may not bump in a discriminatory manner violative of the airline's published standards. In all of the cases in which a private remedy has been implied from § 1374(b) there was a discriminatory denial of *access* to air facilities. In our view, it is this denial of access to air facilities, whether caused directly, by outright refusal of permission to board, or indirectly, by burdening the potential user with special requirements not applied to the general public, which is critical.

The words of the statute and the decided cases suggest that § 1374(b) does not seek to prevent the harm alleged by these plaintiff-appellants. The harm they suffered simply cannot be construed as discriminatory interference with access to air facilities although appellants have attempted to characterize the harm they suffered as a form of discrimination. They allege that tourist class services were superior to their own "first class" accommodations. Although labeled discrimination, the alleged misconduct is at worst a breach of warranty and a fraudulent misrepresentation.

And, indeed, if it were discrimination, then every breach of contract by an airline would give rise to a private cause of action under § 1374(b).[13] There would always be another unbreached contract to which the disgruntled air passenger could compare the services performed for him. We emphatically decline appellants' invitation to so characterize this alleged breach of contract and, thereby, to widen the application of this statute to forms of conduct it was not enacted to cover.

The legislative history of § 1374(b), which *second Cort* directs us to examine, sheds little light on the problem of implying a private remedy.[14] Nevertheless, within the terms of the *third Cort* test, the purpose of the statutory scheme is made abundantly clear by examination of other sections of the Federal Aviation Act.

§ 49 U.S.C. § 1302(c) and § 1304 suggest that implication of a private remedy in this case would not be consistent with the policy of the Federal Aviation Act. § 49 U.S.C. § 1302(c) indicates that the purpose of the Act is:

The promotion of adequate, economical, and efficient service by air carri-

---

which is regulated by the CAB? The district court concluded that non-air-related services were outside the scope of § 1374(b). *See supra* n. 4. We do not base our decision on this theory. We feel that discrimination was not shown in this case. Consequently, there is no need to decide, at this time, what would be the result if a plaintiff alleged actual discrimination in the presentation of CAB regulated ground services.

**13.** In each of the bumping and racial discrimination cases cited *supra* n. 9 and 10, there was, of course, a breach of contract. An airline, which refuses to board scheduled passengers with reservations, has breached its contract of carriage. But this breach of contract by an airline was decidedly not the reason why private federal remedies were implied. The cases are also linked by the common denominator of discriminatory denial of access to air facilities.

Appellant seems to argue that the statutory prohibition against "prejudice" and "disadvantage" includes a contract breached by inadequate presentation of services. If such a breach of contract were sufficient to state a

cause of action under § 1374(b) then surely the District of Columbia Circuit in *Nader, supra* n. 10, could have construed bumping as a *per se* violation of the Act. Bumping, even when performed in a non-discriminatory fashion results in "disadvantage" to the passenger. Instead the *Nader* court required that the disadvantage result from discrimination against a member of the class of passengers entitled to priority under the airline's own rules. The court did not specifically address the statute's use of the term "discrimination" in conjunction with "prejudice" and "disadvantage." The implication from the decision is clear, however. Something more than mere breach of contract must be shown. In our view that *something more must be a showing that the* breach was the result of *discrimination* by the airline and that the breach had the effect of denying *access* to air facilities.

**14.** *See* 1958 U.S.Code Cong. & Admin.News p. 3741, 85th Cong. 2nd Sess. on Pub.L. 85–726 (House Report No. 2360). 49 U.S.C. § 1374(b) is a fair copy of 49 U.S.C. § 3(1) which had earlier enacted similar non-discriminatory sections into the Interstate Commerce Act.

ers at reasonable charges, *without unjust discriminations, undue preferences or advantages,* or unfair or destructive competitive practices. (Emphasis added).

Although the language of this section is general, the intent to prohibit discrimination, or any form of differentiation between classes of similarly situated passengers, is clear. 49 U.S.C. § 1304, in turn, declares "a public right of freedom of transit through the navigable airspace of the United States." This latter section explicitly states that the general purpose of the Act is to insure free *access* to air facilities. Nowhere does the statute specifically eschew an interest in requiring the airline adequately to perform services as contracted. But protecting passengers from inadequate services would in no way foster the statutory goals stated in § 1302(c) and § 1304. As the Supreme Court stated in *Cort v. Ash,* 422 U.S. at 84, 95 S.Ct. at 2090, "While 'it is the duty of courts to be alert to provide such [implied] remedies as are necessary to make effective the congressional purpose' *J. I. Case v. Borak,* [377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)] in this instance the remedy sought does not aid the primary congressional goal." [15] Accordingly, the Supreme Court in *Cort v. Ash* refused to imply a private remedy. So, too, in this case, where a private remedy would serve no statutory purpose, we shall not imply one.

Within the terms of the *fourth Cort* test, it would be entirely appropriate to relegate these appellants to whatever remedy has been created by state law. As the premise of this discussion, we recognize that a state remedy for breach of contract, breach of warranty and fraudulent misrepresentation was and, perhaps still is, readily available. Only where there is some countervailing national interest should the federal courts imply a federal private remedy when an adequate state remedy already exists. No countervailing national interest has been brought to the attention of the court in this case.

In *J. I. Case v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) [16] for example, the Supreme Court implied a federal remedy when relegating the litigants to a state remedy would frustrate the purpose of § 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a).

In the instant case, the purposes of the Federal Aviation Act would not be fostered by granting a private remedy for this kind of conduct. Thus, any justification for ignoring state remedies which could be derived from *J. I. Case v. Borak, supra,* is utterly lacking in this case.

■ Where little reason for implying a federal remedy can be articulated, federal courts should be wary of bringing entirely new areas of conduct under federal control. In the instant case, we see no greater interest for the development of a federal contract law for regulated air carriers than earlier courts have seen for the development of a federal tort law for regulated air carriers. *Moungey v. Brandt,* 250 F.Supp. 445, 451 (W.D. Wis., 1966). [17] In *Moungey,* the court re-

---

**15.** The denial of an implied remedy in *Cort* is especially persuasive. The Court found the primary purpose of the statute not fostered by implication of private remedy. Respondent, Ash, however, argued that 18 U.S.C. § 610 had a secondary intent to protect shareholders from dissipation of corporate funds; conceding that such a purpose was perhaps secondary, the Supreme Court nevertheless refused to imply a remedy.

In the instant case, implying a cause of action from § 1374(b) will foster no purpose, primary or secondary.

If the Supreme Court refused to imply a remedy which would foster at least a second-

ary purpose of the Act, we should be very wary of implying an action where no statutory purpose can be served.

**16.** In *Case,* shareholders of a company sought derivative damages for a merger which deprived them of pre-emptive rights. The merger allegedly resulted from a proxy statement in violation of § 14(a) of the Securities and Exchange Act.

**17.** *See also Rosdial v. Western Aviation, Inc.,* 297 F.Supp. 681 (D.Colo., 1969) where the court refused to imply a private federal remedy for an air-related wrongful death. The

fused to imply a federal tort remedy for an air accident which was the result of asserted violations of federal safety statutes and regulations. The court pointed out that state remedies had not been characterized as inadequate and further, that the federal government's air safety program would not be improved by creation of a federal tort remedy. In the present case, appellants have never alleged, and could not rightly allege, that state remedies for breach of contract are inadequate. Neither have they suggested any reason why the efficacy of the Federal Aviation Act would be improved by a federal breach of contract remedy in this case.

We note further that in those cases in which a private remedy has been implied from § 1374(b), an adequate state remedy was generally unavailable. In the area of racial discrimination, for example, the federal government has taken the lead in granting relief precisely because many states were unable or unwilling to provide redress for discriminatory mistreatment of minority citizens. Further with respect to boarding priorities at issue in the bumping cases, federal regulatory control has been total.[18] In each of these areas, unless a litigant where permitted to imply a federal remedy from § 1374(b), he would be denied all relief.[19]

The ready availability of state remedies in the instant case, and the absence of any statutory purpose or national interest to justify implication of a federal remedy despite these state remedies, requires us to deny a federal remedy for the alleged breach of § 1374(b).

Under the four tests articulated by the Supreme Court in *Cort v. Ash, supra,* there is no justification for, and no reason to, imply a federal private remedy from § 1374(b) for misconduct which amounts (at the most) to nothing more than a breach of contract, "misrepresentation" or breach of warranty.

### B. *49 U.S.C. § 1381*

This section of the Federal Aviation Act provides:

> The Board may, upon its own initiative or upon complaint by any air carrier, foreign air carrier, or ticket agent, if it considers that such action by it would be in the interest of the public, investigate and determine whether any air carrier, foreign air carrier, or ticket agent has been or is *engaged in unfair or deceptive practices or unfair methods of competition* in air transportation or the sale thereof. If the Board shall find, after notice and hearing, that such air carrier, foreign air carrier, or ticket agent is engaged in such unfair or deceptive practices or unfair methods of competition, it shall order such air carrier, foreign air carrier, or ticket agent to cease and desist from such practices or methods of competition. (Emphasis added).

§ 1381 gives the CAB power to supervise, in an antitrust sense, the activities of the regulated air carrier. To the extent that the CAB, through investigation, finds that an airline has engaged in unfair practices, the agency can issue a cease and desist order.

court relied on 49 U.S.C. § 1506 which provides that common law remedies shall in no way be altered or abridged by the Federal Aviation Act. In the court's view, the statute indicated a policy to leave state tort remedies fully intact.

18. In 14 C.F.R. § 250.1, *et seq.,* the CAB has published rules to govern Boarding priorities. The airline is required to file with the CAB priority rules determining who shall be denied access in an overbooking situation (§ 250.3); to compensate bumped passengers (§ 250.4, § 250.5) who are not placed on an alternate

flight within two hours (§ 250.6); to tender a written explanation of the boarding compensation to the bumped passenger (§ 250.9); and to file monthly oversale reports with the CAB.

19. It should be noted that the Second Circuit in *Fitzgerald, supra* n. 9, specifically stated that the absence of a state remedy for racial discrimination was not the reason for its decision. The Supreme Court's command in *Cort, supra,* that we consider the availability of state remedies calls into question the technique of *Fitzgerald,* if not the result reached in that case.

Unlike § 1374(b), however, no private cause of action has ever been implied from § 1381. The absence of any cases implying a private remedy from § 1381 may be due to *dicta* in a 1963 Supreme Court decision. In *Pan Am Airways v. United States,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963), the Supreme Court analyzed the legislative history of 49 U.S.C. § 1381 and found the statute to be patterned after § 5 of the Federal Trade Commission (FTC) Act, 15 U.S.C. § 45. § 5 of FTC Act gives the FTC power to investigate and enjoin unfair trade practices. In *dicta* discussing the legislative intent of § 1381, the *Pan Am* court stated that neither § 1381 nor § 5 of the FTC Act "embrace a remedy for private wrongs but only a means of vindicating the public interest." 371 U.S. at 306, 83 S.Ct. at 483.[20] Although the implication of a private remedy from § 1381 has apparently not been addressed since this *Pan Am dicta,* several courts have dealt with implication of a private remedy from the model statute, § 5 of the FTC Act. These courts have consistently refused to imply a private remedy from § 5 on the ground that a private remedy would undercut the statutory scheme which grants the agency discretion to determine what is an unfair practice in any given factual contest. *Holloway v. Bristol-Myers Corp.,* 158 U.S.App.D.C. 207, 485 F.2d 986 (1973)[21] and *Carlson v. Coca Cola,* 483 F.2d 279 (9th Cir., 1973).[22]

This analysis is equally relevant to § 1381. Through a regulatory scheme even more comprehensive than the one applied by the FTC, the CAB is given control over all facets of one particular industry. The agency is directed to weigh the "interest of the public" in determining what is an unfair practice under § 1381. The considerable discretion required in weighing the public interest can best be exercised by an agency knowledgeable in all aspects of the regulated airline industry. To imply a private remedy from § 1381 could undercut that discretion in antitrust matters.[23]

---

**20.** In *Pan Am,* the Supreme Court stated further that what is or is not an unfair practice under § 1381 is:

. . . not limited to precise practices that can readily be catalogued. They take their meaning from the facts of each case . . [371 U.S. at 307, 83 S.Ct. 476]. Whether or not transactions of this character meet the standards of competition and monopoly provided by the Act is peculiarly a question for the Board, . . . If the courts were to intrude independently with the construction of the antitrust laws, two regimes might collide. . . . *Id.* at 309–310, 83 S.Ct. at 483.

See also: *American Airlines, Inc. v. North American Airlines, Inc.,* 351 U.S. 79, 83, 76 S.Ct. 600, 100 L.Ed. 953 (1956) and *Nader v. Allegheny Airlines, Inc., supra,* 512 F.2d at 542, *et seq.,* for additional discussion of § 1381.

**21.** In *Holloway,* a consumer group sued a particular manufacturer of analgesics for false advertising violative of § 5 of the FTC Act's prohibition against unfair practices. After analyzing the legislative history, and the purpose of the legislative scheme, the court refused to imply a private cause of action from § 5. The court specifically stated:

Judicial implication of ancillary Federal remedies is a matter to be treated with care, lest a carefully erected legislative scheme— often the result of a delicate balance of Federal and state, public and private interests— be skewed by the courts, albeit inadvertently. This caution is especially apposite in situations where, as here, the substantive prohibitions of the statute are inextricably intertwined with provisions defining the powers and duties of a specialized administrative body charged with its enforcement and where Congress has superimposed a structure of Federal law upon the existing system of common law remedies for fraud and deceit without preempting or superseding the latter. 485 F.2d at 989.

**22.** In *Carlson,* consumer class members sued Coca Cola for promotional games deemed to be unfair under § 5. The court denied jurisdiction under 28 U.S.C. § 1337. The action did not arise under a federal law regulating commerce because § 5 could not give rise to a private suit.

**23.** Just as in *Amtrak, supra* n. 7, and *SIPC, supra* n. 8, implication of a private remedy from § 1381 should be denied because the statute has already designated a specific means of

Further, the Supreme Court's discussion in *Pan Am, supra,* of the legislative history of § 1381 suggests that no private remedy was intended by Congress. To vindicate a public right, Congress created a specialized agency, the Civil Aeronautics Board. This agency, alone, is provided with enforcement powers under § 1381.

■ We conclude that a private remedy may not be implied from § 1381.

### III

For the foregoing reasons, the district court's dismissal of the complaint for failure to state a cause of action will be affirmed.

enforcement and the legislative history indicates an intent to vindicate public wrongs with no private enforcement intended. In our view, implication of a private remedy would undercut the goal of the statutory scheme which vests considerable discretion in the CAB. *Amtrak* and *SIPC* are directly on point and control the result we reach.