Andrea McELDERRY, on behalf of herself and all others similarly situated, Plaintiff,

v.

CATHAY PACIFIC AIRWAYS, LTD., Defendant.

No. 86 Civ. 7783(MEL).

United States District Court, S.D. New York.

Feb. 2, 1988.

As Amended March 15, 1988.

---

Kreindler & Kreindler, New York City, for plaintiff; Paul S. Edelman, Henry Gluckstern, Lori B. Lasson, of counsel.

Robert H. Morse, Galland, Kharasch, Morse & Garfinkle, P.C., Albert F. Grisard, Susan B. Jollie, Andrew B. Sacks, Washington, D.C., Bruce Regenstreich, Callan, Regenstreich & Kosher, Brooklyn Heights, N.Y., for defendant.

LASKER, District Judge.

Plaintiff Andrea McElderry challenges, on antitrust and Federal Aviation Act grounds, a ten dollar excess baggage charge assessed against her by defendant Cathay Pacific Airways, Ltd. ("Cathay Pacific") prior to her flight aboard Cathay Pacific from Hong Kong to Taipei.

In May 1986, McElderry purchased a round-trip airplane ticket which included flights from Louisville, Kentucky to Tokyo, Tokyo to Hong Kong, and Hong Kong to Taipei, ending with a flight back to Louisville by way of domestic stops in Chicago and San Francisco. All the flights on this itinerary were aboard United Airlines, Inc., except for the flight from Hong Kong to Taipei, which was aboard Cathay Pacific. On May 24, 1986, McElderry flew aboard United Airlines from Louisville, Kentucky to Tokyo, Japan. On June 8, 1986, McElderry flew from Tokyo to Hong Kong, again aboard United Airlines. When she landed in Hong Kong, McElderry removed her baggage from the United Airlines airplane. Eight days later, on June 16, 1986, McElderry flew from Hong Kong to Taipei, Republic of China, this time aboard Cathay Pacific Flight 450. When McElderry checked her baggage with Cathay Pacific before boarding this flight, Cathay Pacific assessed her a $10.64 baggage charge on the grounds that her baggage weighed seven kilograms over the twenty kilogram free baggage allowance which Cathay Pacific alleges was applicable to McElderry on that flight. McElderry claims that this weight-based baggage allowance system

was not applicable to her, that she should not have been charged $10.64 for her baggage, and that, instead, Cathay Pacific should have applied a piece-based allowance system to her baggage, under which she alleges that she would have been able to check her baggage for free.

McElderry, who alleges that she "is one of a class of thousands of passengers who have paid improper excess baggage charges on defendant's airline since 1976," [1] claims that she is entitled to relief for the infliction of this excess baggage charge under §§ 403 and 404(b) of the Federal Aviation Act ("FAA"), 49 U.S.C. §§ 1373, 1374(b); §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; and § 1 of the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13.[2]

Cathay Pacific moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and moves for sanctions against McElderry's attorneys under Fed.R.Civ.P. 11. As discussed below, Cathay Pacific's motion to dismiss is granted [3] and its motion for sanctions is denied.

## I. *Federal Aviation Act Claims*

McElderry claims that the weight-based baggage charge assessed against her by Cathay Pacific is prohibited by Civil Aeronautics Board ("CAB") No. 55, Rule No. 16,[4] a tariff applicable to Cathay Pacific and in effect at the time of McElderry's flight. McElderry argues that this "tariff, on its face, did not permit a weight-based system to apply to plaintiff's journey, and specifically required application of a piece-based allowance and overcharge system...." [5] McElderry also asserts that Cathay Pacific's baggage charge system violates a 1976 Civil Aeronautics Board ("CAB") decision, *Baggage Allowance Tariff Rules in Overseas and Foreign Air Transportation* (*"Baggage Allowance"*), Docket No. 24869,[6] which invalidated two then-existing tariffs under which passengers were allowed to check baggage weighing up to a certain amount freely, but were charged at a rate of one percent of the applicable first-class fare per kilogram above that weight. McElderry contends that she is entitled to relief for these alleged violations under FAA §§ 403(b) and 404(b), 49 U.S.C. §§ 1373(b), 1374(b).

■ McElderry's FAA claims are without merit. First, I determine that there is no private right of action under these provisions of the FAA under the four-factor analysis set forth in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d

---

1. Second Amended Complaint at ¶ 8 (October 2, 1987).

2. McElderry also seeks relief under common law principles of fraud, breach of contract and unjust enrichment. Given the dismissal of McElderry's federal claims by this opinion, as discussed below, the court declines to exercise pendent jurisdiction over McElderry's state law claims, and they are accordingly dismissed. Diversity jurisdiction under 28 U.S.C. § 1332 is not alleged.

3. The primary basis for dismissal of both McElderry's Federal Aviation Act claims and her antitrust claims is lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). To the extent that the motion to dismiss was also brought under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the motion is properly converted to a motion for summary judgment under Fed.R.Civ.P. 56, as required by Rule 12(b) when "matters outside the pleading are presented to and not excluded by the court." *See Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). Here, conversion is appropriate because both parties have availed themselves of

the opportunity to provide affidavits, numerous exhibits and other materials outside the pleadings and the court has considered such materials. Moreover, regardless of how the motion is labelled, dismissal is warranted: it is clear not only that "there is no genuine issue as to any material fact" as required by Rule 56, but also that McElderry can prove no set of facts in support of her claims which would entitle her to relief, the standard for dismissal under Rule 12(b)(6), *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

4. *See Memorandum in Support of Motion to Dismiss and For Sanctions* ("Cathay Pacific Memorandum"), Exhibit 11, Passenger Rules Tariff No. PR–3, Local and Joint Rules and Regulations Governing the Carriage of Passengers and Baggage Applicable Between Points Throughout the World, Rule No. 16 ("Rule 16").

5. Second Amended Complaint at ¶ 14.

6. *See* Affidavit of Paul S. Edelman, Counsel for McElderry ("Edelman Affidavit") (Feb. 26, 1987), Exhibit A, CAB Decision of Feb. 25, 1976.

26 (1975).[7] The Court of Appeals for the Third Circuit has concluded, under similar circumstances, that there is no private right of action available under either § 403(b), *see Wolf v. Trans World Airlines, Inc.,* 544 F.2d 134, 137 (3d Cir.1976) (no private right of action where airline passengers allegedly provided with airline package tour accommodations impracticably far from airport), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977), or § 404(b), *see Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332 (3d Cir.1975) (no private right of action where airline passengers allegedly provided with unacceptable ground accommodations in airline package tour). Although these decisions are not binding on this court, they are persuasive and I conclude that they are correct.

Section 403(b) states that:

No ... foreign air carrier ... shall charge ... a greater or less or different compensation for air transportation, or for any service in connection therewith, than the rates, fares, and charges specified in then currently effective tariffs of such ... foreign air carrier....

49 U.S.C. § 1373(b). § 404(b) states that:

No ... foreign air carrier ... shall make, give, or cause any undue or unreasonable preference or advantage to any particular person ... or subject any particular person ... to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

49 U.S.C. § 1374(b). In finding no private right of action under either section, the Third Circuit focussed on the first and fourth factors articulated in *Cort,* which inquire whether the plaintiff is " 'one of the class for whose *especial* benefit the statute was enacted,' " and whether the cause of action is "one traditionally relegated to state law, in an area basically the concern of the States," *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (citation omitted and emphasis in the original).[8]

Applying the first *Cort* factor to § 403(b), the Third Circuit found in *Wolf*:

Plaintiffs here are not the special beneficiaries of § 403(b). That section prohibits the charging of fares either higher or lower than those established by the tariff. Yet a passenger could claim to be injured only by a higher charge. Because § 403(b) proscribes violations of the tariff that inure to passengers' benefit as well as to their detriment, we conclude that § 403(b) could not have been passed especially for the benefit of those in plaintiffs' position.

*Wolf,* 544 F.2d at 137. As to § 404(b), the Third Circuit found in *Polansky* that plaintiffs, who complained of poor ground accommodations provided by an airline package tour, were not the special beneficiaries of § 404(b) under *Cort* because they had not suffered the harm that § 404(b) was designed to prevent:

[§ 404(b) ] aims to protect the right of *access* to air facilities from discriminatory interference by the air carrier. The airline is required to treat all potential passengers and users equally. Thus, the airline may not prohibit minority groups from equal access to flights or terminal facilities.... [I]t is this denial of access

---

7. The four factors articulated in *Cort* are:
   First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087–88 (citation omitted) (emphasis in original).

8. For reasons similar to those discussed above, the third *Cort* factor—whether implication of a private remedy is consistent with the underlying purpose of the legislative scheme—also cuts against a finding of a private right under §§ 403(b) and 404(b), *see Wolf,* 544 F.2d at 136–37; *Polansky,* 523 F.2d at 337–38, while the second *Cort* factor—indication of legislative intent—sheds no light on the question, *Wolf,* 544 F.2d at 138 n. 3; *Polansky,* 523 F.2d at 336.

to air facilities, whether caused directly, by outright refusal of permission to board, or indirectly, by burdening the potential user with special requirements not applied to the general public, which is critical.

*Polansky,* 523 F.2d at 335–36 (emphasis in original). *See also Sanders v. Air India,* 454 F.Supp. 1371, 1374–78 (S.D.N.Y.1978) (travel agents' claim of discrimination in compensation did not fall within interest to be protected by § 404(b)).

. Application of the first *Cort* factor to the case at hand would lead to a similar negative result as to both § 403(b) and § 404(b). Because, as in *Wolf,* McElderry can "claim to be injured only by a higher charge," 544 F.2d at 137, and she simply alleges that she was over-charged for her baggage because of its weight, and does not, as in *Polansky,* allege that she was a member of a group subject to discrimination, she can not claim that either § 403(b) or § 404(b) was passed especially for her benefit.

Turning next to the fourth *Cort* factor— whether the cause of action is traditionally relegated to state courts—both the *Polansky* and the *Wolf* courts concluded that this inquiry cut against implication of a private right of action under §§ 403(b) and 404(b):

> As the premise of this discussion, we recognize that a state remedy for breach of contract, breach of warranty and fraudulent misrepresentation was and, perhaps, still is, readily available. Only where there is some countervailing national interest should the federal courts imply a federal private remedy when an adequate state remedy already exists. No countervailing national interest has been brought to the attention of the court in this case.
>
> . . . .
>
> Where little reason for implying a federal remedy can be articulated, federal courts should be wary of bringing entirely new areas of conduct under federal control.... In the instant case, appellants have never alleged, and could not rightly allege, that state remedies for breach of contract are inadequate. Nei-

ther have they suggested any reason why the efficacy of the Federal Aviation Act would be improved by a federal breach of contract remedy in this case.

*Polansky,* 523 F.2d at 337–38; *accord, Wolf,* 544 F.2d at 138. This analysis applies equally in the case at hand. McElderry has pointed to no reason why she can not pursue her over-charge claim in state court. In sum, I conclude that McElderry has no private right of action under either § 403(b) or § 404(b).

■ Furthermore, even if McElderry had the right to press her claims under the FAA in federal court, her claims are without merit. It is undisputed that Cathay Pacific charges for excess baggage originating in the United States under the following method:

> [B]aggage that originates in the United States is assessed on the United States' "piece" system, regardless of the number of stopovers or changes of aircraft, so long as the baggage is either checked through from point of origin or is re-checked within 24 hours onto a connecting flight. On the other hand, baggage removed from the system and then re-checked onto a continuing flight, except where the connection time is less than 24 hours, is assessed based on the system applicable in the country where it is re-checked.[9]

McElderry alleges that this baggage charge policy violates Rule 16, the Cathay Pacific tariff filed with CAB which governs, among other things, baggage charges. However, there is no possible reasonable interpretation of Rule 16 which could support this claim. To the contrary, for the following reasons, Rule 16 indicates that while Cathay Pacific must maintain a piece-based baggage charge system for flights to or from the United States, it is allowed to maintain a weight-based baggage charge system for those flights for which both the point of origin and the point of destination are outside the United States.

---

**9.** Affidavit of Hans B. Olsen, Commercial Director of Cathay Pacific, at ¶ 6 (Jan. 8, 1987).

Section (E) of Rule 16 explicitly provides that a weight-based baggage charge system may be employed on certain Cathay Pacific flights. Because Rule 16(E) clearly states that this weight-based system is *not* applicable to Cathay Pacific "between points in the U.S.A. and points outside the U.S.A./Canada," [10] it appears to follow that the weight-based system *is* allowable on Cathay Pacific flights between two foreign destinations. While Section (V) of Rule 16 provides for a piece-based baggage charge system, the very title of the rule—*"Free Baggage Allowance and Baggage Charges Between Points in the U.S.A. and Points Outside the U.S.A."*—indicates that Rule 16(V) applies only to flights where either the point of origin or the point of destination is in the United States.[11] Here, it is undisputed that McElderry's flight on Cathay Pacific originated in Hong Kong and landed in Taipei.

McElderry makes two arguments in support of her claim that, despite the language of Rule 16 cited above, Rule 16(V) rather than Rule 16(E) controls the appropriate baggage charge applicable to her on the flight in question. First, McElderry argues that because she was travelling on a round-trip ticket—of which only the Hong Kong–Taipei leg was on Cathay Pacific—and her final destination was Louisville, Kentucky, "the flight in question *must* be construed, under DOT requirements and other authority, as a flight between the U.S.A. and points outside the U.S.A.,"[12] which would then be governed by Rule 16(V). However, there is insufficient legal support for this interpretation: the cases which McElderry cites in support of it are not on point. *In re Alleged Food Poisoning Incident, March 1984*, 770 F.2d 3 (2d Cir.1985), concerned the correct interpretation of the phrase "place of destination" under the Warsaw Convention in a flight with stop overs and using different air carriers. Here, however, Rule 16 does not use the "destination" phraseology, using instead the "point to point" language cited above, and, of course, interpretation of the Warsaw Convention is not at issue. *Barkanic v. General Admin. of Civil Aviation*, 822 F.2d 11 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987), involving jurisdictional issues under the Foreign Sovereign Immunities Act, has no direct bearing on this issue. Moreover, the undisputed fact that McElderry stayed in Hong Kong for eight days and had been out of the United States for more than three weeks before she took the Cathay Pacific flight—as well as the undisputed fact that at that time Cathay Pacific provided no airplane service to or from the United States—further undercuts McElderry's argument that her Cathay Pacific flight from Hong Kong to Taipei can reasonably be viewed as a flight to or from the United States.

Second, McElderry argues that only Rule 16(V) rather than Rule 16(E) may be legitimately applied to her because Rule 16(V) "conform[s] on its face" to CAB's 1976 *Baggage Allowance* decision,[13] whereas Rule 16(E) does not. However, the *Baggage Allowance* decision and the subsequent CAB and Department of Transportation ("DOT") orders reaffirming the principles underlying it,[14] upon which McElderry relies, are not applicable to Cathay Pacific: these orders, on their face, refer only to tariffs filed with CAB by members of The International Air Transport Association ("IATA"), a trade organization of air carriers which seeks to establish joint tariffs and rates for its members. It is undisputed that Cathay Pacific is not an IATA member. Moreover, these orders do not, on their face, prohibit the weight-based charges: instead, they reflect CAB's policy of granting antitrust immunity only to those rate-setting air carrier organizations

**10.** Cathay Pacific Memorandum at Exhibit 11, Rule 16(E) at 32–B.

**11.** *Id.,* Rule 16(V) at 44–P.

**12.** Letter to the court of Paul S. Edelman, Counsel to McElderry, at 3 (Oct. 1, 1987) ("Edelman letter").

**13.** Edelman letter at 4 (emphasis deleted).

**14.** *See* Memorandum in Support of Motion to Dismiss and For Sanctions, Exhibits 1–10, ten of the CAB and DOT orders cited in Complaint.

whose members employ the piece-based baggage system.

In sum, even if a private right of action existed under the relevant sections of the FAA, Rule 16(E)'s weight-based rules rather than Rule 16(V)'s piece-based rules governed the appropriate baggage charge system on McElderry's Cathay Pacific flight from Hong Kong to Taipei, and hence the $10 excess baggage fee charged to McElderry was legal.

## II. Antitrust Claims

■ McElderry alleges that Cathay Pacific's baggage charge system violates §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and § 4 of the Clayton Act, 15 U.S.C. § 15. She argues that Cathay Pacific violated § 1 of the Sherman Act because it

knowingly and unlawfully did combine or conspire with other air carriers, in restraint of trade or commerce of American-based carriers in foreign markets, to adopt an unapproved and illegal baggage charge system for application to passengers with itinerary origins or termination within the United States,[15]

and violated § 2 of the Sherman Act because it

knowingly and unlawfully did combine or conspire with other air carriers to monopolize a part of the trade or commerce with foreign nations by adopting baggage allowance and excess baggage charges which had been agreed to by the International Air Transport Association ... for application to service not involving itineraries with origins or terminations in the United States. By doing so, defendant applied a schedule of charges which are economically disadvantageous to travelers like plaintiff....

The charges imposed by defendant are economically advantageous to air carriers.[16]

For the reasons discussed below, these claims are dismissed for failure to meet the requirements of the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a(1)(A) (1982), and for reasons of comity.[17]

Under the Foreign Trade Antitrust Improvement Act, federal courts do not have jurisdiction under the Sherman Act over conduct involving "trade or commerce ... with foreign nations" unless such conduct has a "direct, substantial, and reasonably foreseeable effect" on United States domestic, import or export commerce. 15 U.S.C. § 6a(1)(A). An anticompetitive effect on United States commerce is required for jurisdictional nexus, regardless whether there was anti-competitive conduct in the United States, *see Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F.Supp. 920, 924 (E.D.N.Y.1985), and the applicable test is "whether the effect would have been evident to a reasonable person making practical business judgments," *Eurim–Pharm GmbH v. Pfizer Inc.*, 593 F.Supp. 1102, 1106 n. 4 (S.D.N.Y.1984).

Although McElderry's second amended complaint does allege that Cathay Pacific's acts have a direct anticompetitive effect on United States commerce, the complaint presents no facts in support of those allegations. In McElderry's memorandum of law, however, she contends that:

Every time a passenger protected by the CAB/DOT-approved tariff scheme is overcharged, there is a direct and cognizable effect on U.S. commerce.... Furthermore, the overcharges present both an immediate competitive disadvantage

---

**15.** Second Amended Complaint at ¶ 40.

**16.** *Id.* at ¶ 41.

**17.** McElderry also alleges that Cathay Pacific violated § 1 of the Robinson–Patman Price Discrimination Act, 15 U.S.C. § 13, by establishing a baggage allowance and charge system which resulted in the discrimination in price between different purchasers of commodities of like quality, to wit, an airline through-ticket providing for passage from Hong Kong to

Taipei on defendant's airline and a similar passage on an airline obeying United States laws and tariff requirements. Second Amended Complaint at ¶ 42. This claim is without merit: the Robinson–Patman Act applies only to the sale of goods, not services, and applies only to discriminatory sales that take place in the United States. *See generally,* ABA Antitrust Section, Antitrust Law Developments at 222, 226–27 (2d Ed. 1984 and Supp.).

to complying, essentially United States-based carriers through reduced revenues as compared to their competitors, as well as an indirect loss through adverse effects on business good will when a United States-based joint fare through-ticketing carrier is concerned. In Professor McElderry's case, United Airlines lost out as compared to Cathay Pacific—it was compromised as the issuer of a ticket on which a passenger was improperly overcharged.[18]

These arguments are without merit. First, even accepting, for the purposes of this motion to dismiss, McElderry's contention that thousands of American passengers have been overcharged for their baggage by Cathay Pacific, an allegation of mere monetary injury is not enough to state a Sherman Act claim: a Sherman Act plaintiff must "show injury to a market or to competition in general, not merely injury to individuals." *Fine v. Barry and Enright Productions*, 731 F.2d 1394, 1399 (9th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); *accord, McGlinchy v. Shell Chemical Co.*, 1985–2 Trade Cas. CCH ¶ 66,672 at 63,169 (N.D.Cal.1984). Second, McElderry's argument that Cathay Pacific's weight-based system is anticompetitive because it increases Cathay Pacific's revenues as compared to those air carriers which follow the piece-based baggage charge system is illogical, even assuming in McElderry's favor that 1) Cathay Pacific in fact *has* any United States competitors on its Hong Kong–Taipei flights— which it denies, and 2) the weight-based system necessarily generates more revenue than the piece-based system—which Cathay Pacific also denies. As Cathay Pacific points out,

> if U.S. carriers ever *did* compete with Cathay Pacific on this route, the U.S. carriers' allegedly beneficial baggage pricing would, under Plaintiff's theory,

cause consumers to choose the U.S. carriers over Cathay Pacific. Rather than harm hypothetical U.S. competitors, Cathay Pacific['s] challenged baggage charges would benefit them.[19]

Finally, McElderry's assertion that Cathay Pacific causes loss of good will to United States-based air carriers which issue tickets which include flights on Cathay Pacific is, at best, speculative. In sum, it cannot be concluded that Cathay Pacific's excess baggage charge system has a direct, substantial and reasonably foreseeable anticompetitive effect on United States commerce.

■ Moreover, even if McElderry's claim were held to have met the requirements of the Foreign Trade Antitrust Improvements Act, the better course would still be to decline to exercise jurisdiction under principles of international comity. *See O.N.E. Shipping v. Flota Mercante Grancolombiana*, 830 F.2d 449, 451 (2d Cir.1987) (affirming district court's dismissal of antitrust action involving interests of Colombian government on comity grounds). The United States and the United Kingdom disagree on the appropriate method for measuring and assessing excess baggage: since the 1976 CAB *Baggage Allowance* decision the United Kingdom has continued to approve weight-based systems for its air carriers and has objected to any attempts to impose a piece-based system on foreign air carriers engaged in purely foreign travel.[20]

In this case, the United Kingdom has filed a diplomatic note with the Department of State expressing the view that this court has no jurisdiction over this dispute under principles of international law:

> Her Majesty's Government can see no basis in international law for the exercise of jurisdiction by the United States. Neither Hong Kong nor Taiwan are US ter-

---

**18.** Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss and for Sanctions at 87.

**19.** Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and For Sanctions at 8–9 (April 8, 1987).

**20.** *See* Affidavit of Robert H. Morse, Counsel for Cathay Pacific, ("Morse Affidavit"), at ¶¶ 5–7 and Exhibits 6–8 (describing history of U.S./U.K. conflict over baggage charges) (April 8, 1987).

ritories. Cathay Pacific Airways is a United Kingdom airline which at the time of the plaintiff's flight did not operate to the United States. The right for it to fly between Hong Kong and Taipei, and the conditions on which passengers may be carried on such flights, is a matter within the jurisdiction of Hong Kong and Taiwan. The fact that the plaintiff is a US citizen and the ticketing for the journey between Hong Kong and Taipei (but not the carriage) had been effected by United Airlines in the United States, where she happened to begin her series of journeys, is insufficient to justify the exercise of jurisdiction by the United States. ... If in such circumstances the governments of courts of third States were entitled to superimpose unilaterally their own conditions of carriage the resulting conflicts between national rules would result in total uncertainty as to which conditions applied to any particular passenger on any particular flight.

Whereas uniform conditions of carriage may be a desirable objective—particularly for passengers who make a series of journeys using two or more airlines—the objective cannot be achieved by the purported exercise of extra-territorial jurisdiction which infringes the sovereignty of other States.[21]

Where, as here, there is a direct conflict between the United States and United Kingdom, the continuance of which could clearly exacerbate the stated differences between the two countries, the proper course seems clearly to be to "avoid the unnecessary irritant of a private antitrust action" by declining jurisdiction. *O.N.E. Shipping*, 830 F.2d at 454 (2d Cir.1987).[22]

Moreover, the related "act of state" doctrine constitutes a further basis for declining jurisdiction in this case. The court

of appeals for the this circuit has recently explained that this doctrine

is a principal of law designed primarily to avoid judicial inquiry into the acts and conduct of the officials of the foreign state, its affairs and its policies and the underlying reasons and motivations for the actions of the foreign government.

*O.N.E. Shipping*, 830 F.2d at 452. Here, Cathay Pacific has convincingly demonstrated that its baggage charge system for baggage originating in the United States is necessitated by the United Kingdom's regulatory system. Hans B. Olsen, the Commercial Director of Cathay Pacific, explains in his affidavit that:

Cathay Pacific's applicable tariffs filed in the United States state that the piece-system would apply for travel to or from the United States. Cathay Pacific's applicable tariffs filed with the United Kingdom state that the weight-based system would apply for travel to or from Hong Kong, except for direct flights to or from the United States. Cathay Pacific has reconciled these two conflicting regulatory schemes with regard to travel originating in the United States passing through Hong Kong to points outside of Hong Kong, consistent with the principles contained in the U.S.–U.K. Bilateral Aviation Agreement, by implementing the ... excess baggage charge policy [outlined above].[23]

J.T. Thorpe, Director of Civil Aviation of the Civil Aviation Department of the Government of Hong Kong, confirms in his affidavit that:

Cathay Pacific has been authorized by the appropriate aeronautical authorities to operate air services between Hong Kong and Taiwan based on specified tariffs.... At present, the utilization by Cathay Pacific Airways of any other ex-

**21.** Morse Affidavit at Exhibit 6, Note No. 21.

**22.** It is also noted that it is undisputed that Cathay Pacific, which is incorporated in Hong Kong and has its principal place of business there, did not provide any airplane service to or from the United States at the time of McElderry's flight, and that the conduct complained of in this action also took place outside of the United States, two factors which cut against

assertion of jurisdiction in cases raising comity concerns. *Cf. Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et D'Armement*, 451 F.2d 727, 729 (2d Cir.1971) (per curiam) (articulating comity balancing test), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972).

**23.** Olsen Affidavit at ¶ 6.

cess baggage charge system [than the weight-based system] would be outside its operating authority.[24]

These affidavits establish that this is case in which, as in *O.N.E. Shipping,* "the causal chain between a defendant's alleged conduct and plaintiff's injury cannot be determined without an inquiry into the motives of the foreign government," and because "the conduct of the [defendant] has been compelled by the foreign government," the defendant "is entitled to assert the defense of foreign government compulsion and the act of state doctrine is applicable." *O.N.E. Shipping,* 830 F.2d at 453.

For the reasons stated above, McElderry's antitrust claims are dismissed.

### III. Rule 11 Sanctions

 Cathay Pacific has moved for sanctions against McElderry's attorneys under Fed.R.Civ.P. 11. Although, in view of the disposition above it can not be said that the motion was made without reason, it is nevertheless denied. Rule 11 sanctions do not, of course, automatically attach as a result of the dismissal of McElderry's claims. Rather, the relevant inquiry is whether a competent attorney could have formed the reasonable belief that McElderry's pleading was warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir. 1985).

Here, McElderry presented novel claims which are essentially of first impression. While I have concluded that McElderry's claims may not be presented in a federal court and are otherwise lacking in merit, McElderry's theories in support of jurisdiction and on the merits of her claims were at least colorable. The advisory committee notes to Rule 11 warn that Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing ... legal theories," and that "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted," including whether "the pleading ... was based on a plausible view of the law...." Under these circumstances, Cathay Pacific's motions for sanctions is denied. *See Skepton v. County of Bucks, PA,* 613 F.Supp. 1013, 1022 (E.D.Pa.1985) (denying sanctions after dismissal of antitrust claims, where "[a]lthough ... plaintiff's complaint [was found] to be without merit, ... plaintiff's complaint was an attempt, albeit unsuccessful, to create a novel cause of action"); *Florida Monument Builders v. All Faiths Memorial Garden,* 605 F.Supp. 1324, 1326 (S.D.Fl.1984) (denying sanctions after dismissal of antitrust claims because "[p]laintiff did have at least a colorable claim based on an extension of existing law").

\*    \*    \*

McElderry's complaint is dismissed. Cathay Pacific's motion for sanctions is denied. It is so ordered.

---

**24.** Affidavit of J.T. Thorpe at ¶ 2 (Jan. 6, 1987).